UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JERRY SLAUGHTER,

                                        Plaintiff,

                                                                5:19-CV-00305
                        v.                                      (DNH/TWD)

POLICE OFFICER COLIN MAHAR,

                                        Defendant.
_____

APPEARANCES:

JERRY SLAUGHTER
18-B-2881
Plaintiff pro se
Gouverneur Correctional Facility
P.O. Box 480
Gouverneur, New York 13642


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### ORDER AND REPORT-RECOMMENDATION

The Clerk has sent the *pro se* civil rights complaint of Plaintiff Jerry Slaughter, brought

pursuant to 42 U.S.C. § 1983, for initial review.  (Dkt. No. 1.)  The Defendant is Syracuse City

Police Officer, Colin Mahar ("Mahar").  Also before the Court is Plaintiff's application to

proceed *in forma pauperis* ("IFP application").  (Dkt. No. 2.)

I.      **IFP APPLICATION**

A court may grant *in forma pauperis* status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application,

the Court finds that he meets this standard.  Therefore, Plaintiff's IFP application (Dkt. No. 2) is

granted.

## II.    LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C.

§ 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the

case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the

complaint lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  "An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998) (citations and internal quotation marks omitted).  Although extreme caution

should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse

party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*,

700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not

frivolous before permitting a plaintiff to proceed.  *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260

(2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua

sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to

state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III.    COMPLAINT

Plaintiff alleges that on September 1, 2017, Defendant Syracuse City Police Officer Mahar knowingly violated lawful procedure, thereby causing a false identification leading to

Plaintiff's false arrest. (Dkt. No. 1 at 4.[1]) As a result, Plaintiff was incarcerated for several months. *Id*. Plaintiff claims that Mahar knowingly tampered with a witness during the course of an investigation violating Plaintiff's right to be free from false arrest, false incarceration, defamation of character, and loss of liberty. *Id*. As a result, Plaintiff suffered from mental anguish and pain and suffering in violation of his constitutional rights. *Id.*

Plaintiff has alleged claims for: (1) defamation based upon Defendant's knowing violation of lawful procedure; (2) false identification and false arrest based on Defendant's witness tampering; and (3) knowingly and willingly violating lawful procedures using official misconduct in witness tampering causing Plaintiff a loss of liberty. *Id*. at 5.

## IV.    ANALYSIS

### A.    False Arrest

The Court construes Plaintiff's complaint as attempting to allege a § 1983 claim for false arrest in violation of his Fourth Amendment rights. The elements of a false arrest claim under the Fourth Amendment, which are essentially the same as a state law false arrest claim, are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (citation and internal quotation marks omitted).

Although the allegations supporting Plaintiff's false arrest claim are at best bare bones, mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that the Defendant be required to respond to Plaintiff's Fourth Amendment false arrest claim.

### B.    Defamation

The Court finds that even construing Plaintiff' complaint in liberal fashion, he has failed to state a claim for defamation under either Section 1983 or New York State law.

### 1.    Section 1983

The Court recognizes that a defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 "when a plaintiff can demonstrate 'a stigmatizing statement plus a deprivation of a tangible interest.'" *Gerrard v. Burns*, No. 7:14-CV-1235 (DNH), 2015 WL 1534416, at *3 (N.D.N.Y. April 6, 2015).[2]  "The action is one for violation of a liberty or property interest protected by due process." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  "To prevail on a 'stigma plus' claim, a plaintiff must show (1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Id*. (internal quotation marks omitted).  The state-imposed burden or alteration of status "must be in addition to the stigmatizing statement." *Id*. (citation and internal quotation marks omitted); *see also Paul v. Davis*, 424 U.S. 693, 607-99 (1976) (the due process requirement of a "stigma plus" showing made that constitutional doctrine effectively an extension of state law defamation claims, albeit it with added elements to prevent the constitutionalizing of a state court cause of action).

---

[2]  Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Courts have recognized a 'stigma-plus' claim where officers are alleged to have made defamatory statements in connection with unlawful arrests or seizures in violation of the Fourth Amendment. *See, e.g.*, *Marrero v. City of Hialeah*, 625 F.2d 499, 517-19 (5th Cir. 1980)). Plaintiff, however, has failed to allege the "utterance of a statement sufficiently derogatory to injure his . . . reputation, that is capable of being proved false," or indeed any statement whatsoever by Defendant. *Sadallah,* 383 F.3d at 38. Rather, Plaintiff claims only that his character was defamed by Defendant's knowing violation of lawful procedure. (Dkt. No. 1 at 5.)

Therefore, the Court finds that Plaintiff has failed to state a "stigma plus" claim under § 1983 and recommends dismissal. In light of Plaintiff's *pro se* status, the Court recommends that the dismissal be with leave to amend his § 1983 stigma-plus defamation claim in the event he is able to allege facts plausibly showing "(1) the utterance [by Defendant] of a statement sufficiently derogatory to injure his . . . reputation, that is capable of being proved false, and that he . . . claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah,* 383 F.3d at 38.

2.    New York State Law

"To prevail on a claim for either libel or slander under New York law, plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] *per se*, and (vii) not protected by privilege." *Alexander v. City of Syracuse*, No. 5:17-CV-1195 (DNH), 2018 WL 6591426, at *7 (N.D.N.Y. Dec. 13, 2018) (quoting *Neal v. Asta Funding, Inc.*, No. 13 CV 2176(VB), 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) (internal quotation marks omitted)). As with his Fourth

Amendment stigma-plus claim, Plaintiff has failed to allege a defamatory statement of fact made by Defendant.  Moreover, Plaintiff's bare bones accusation that he "suffered defamation of character based upon Defendant's knowing violation of Lawful Procedure," fails to satisfy the requirement that he allege facts plausibly showing that if a statement was made it was false; and he has failed to allege facts regarding circumstances concerning the publication of the defamatory statement to a third party, the special harm caused to Plaintiff, or facts supporting a finding of defamation *per se*.  *See Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identified the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.")

Therefore, the Court recommends that Plaintiff's state law claim be dismissed with leave to amend in the event Plaintiff is able to allege facts satisfying the requirements of a state law defamation claim set forth above, and without prejudice to assertion of the claim in a state court action.

### C.    Witness Tampering

Plaintiff alleges that his false arrest was based on Mahar's tampering with a witness, and that Mahar "did knowing and willingly violate lawful Procedures using Official misconduct in witness tampering causing loss of liberty."  (Dkt. No. 1 at 5.)  Tampering with a witness is a federal crime codified at 18 U.S.C. § 1512.  The provision gives no private right of action to Plaintiff.  *See Bender v. City of New York*, No. 09-CV-3286, 2011 WL 4344203, at *2 (S.D.N.Y. Sept. 14, 2011) (no private right of action for § 1512); *Zahl v. Kosovsky*, No. 08 Civ. 8308 LTS THK, 2011 WL 779784, at *10 (S.D.N.Y. March 3, 2011), *aff'd on other grounds*, 471 F. App'x

34 (2d Cir. 2012).  Therefore, the Court recommends dismissal of Plaintiff's witness tampering

claim with prejudice.[3]

      **ACCORDINGLY**, it is hereby

      **ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) be **GRANTED**; and it is

      **RECOMMENDED** that Plaintiff's witness tampering claim be **DISMISSED WITH**

**PREJUDICE** (Dkt. No. 1); and it is further

      **RECOMMENDED** that Plaintiff's Fourteenth Amendment stigma plus claim under §

1983 and his state law defamation claim be **DISMISSED WITH LEAVE TO AMEND** for

failure to state a claim; and it is

      **RECOMMENDED** that Plaintiff's Fourth Amendment false arrest claim survive initial

review, and that Defendant, or his counsel, be required to file a response as provided for in Rule

12 of the Federal Rules of Civil Procedure within thirty (30) days after the District Court issues a

decision on this report-recommendation; and it is further

      **RECOMMENDED** that in the event the District Court allows Plaintiff to file an

amended complaint, he be instructed that any amended complaint be a complete pleading that

supersedes his original complaint in all respects (and does not incorporate by reference any

portion of his original complaint); and that he not attempt to reassert any claim that has been

dismissed with prejudice by the District Court.  The Court further recommends that Plaintiff be

directed to comply in all respects with Rules 8(a) and 10(b) of the Federal Rules of Civil

---

[3] The complaint fails to provide sufficient factual allegations for the Court to consider whether the alleged conduct Plaintiff refers to as "witness tampering" may be an element of his false arrest claim, or if Plaintiff may have a viable claim for malicious prosecution in which inducement of false testimony played a part.

Procedure, which require, inter alia, that the amended complaint contain a short and plain statement of each claim showing that Plaintiff is entitled to relief, and that he state his claims in numbered paragraphs, each limited as far as practical to a single set of circumstances; and it is hereby

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:  May 6, 2019
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4]  If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2018 WL 6591426
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Troy ALEXANDER, Plaintiff,
v.
CITY OF SYRACUSE, County of
Onondaga, Detective Rory Gilhooley,
and Lashauna Monahan, Defendants.
County of Onondaga, Cross-Claimant,
v.
City of Syracuse and Detective Rory
Gilhooley, Cross-Defendants. [1]

5:17-CV-1195
|
Signed 12/13/2018

**Attorneys and Law Firms**

OF COUNSEL: K. FELICIA DAVIS, ESQ., OFFICE OF K. FELICIA DAVIS, P.O. Box 591, Syracuse, NY 13201, Attorneys for Plaintiff.

OF COUNSEL: ERICA T. CLARKE, ESQ., CITY OF SYRACUSE CORPORATION COUNSEL, 233 East Washington Street, Room 300 City Hall, Syracuse, NY 13202, Attorneys for Defendants City of Syracuse and Detective Rory Gilhooley.

OF COUNSEL: CAROL. L. RHINEHART, ESQ., ONONDAGA COUNTY DEPARTMENT OF LAW, John H. Mulroy Civic Center, 421 Montgomery Street, 10th Floor, Syracuse, NY 13202, Attorneys for Defendant County of Onondaga.

**MEMORANDUM–DECISION and ORDER**

DAVID N. HURD, United States District Judge

# I. INTRODUCTION

**\*1** Plaintiff Troy Alexander ("Alexander" or "plaintiff") has filed this civil rights action pursuant to 42 U.S.C. § 1983 and related state law against defendants City of Syracuse (the "City"), County of Onondaga (the "County"), Syracuse Police Department ("SPD") Detective Rory Gilhooley ("Detective Gilhooley"), and Lashauna Monahan ("Monahan").

Alexander's eight-count amended complaint asserts claims for unlawful search and seizure, false arrest, malicious prosecution, defamation, intentional infliction of emotional distress, and violations of the New York State Constitution. The County has answered the complaint and asserted a cross-claim for apportionment of liability against the City and Detective Gilhooley (collectively the "City defendants").

For their part, however, the City defendants have moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) seeking to dismiss several of Alexander's state and federal claims as well as the County's cross-claim for contribution. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

# II. BACKGROUND

The following facts are taken from Alexander's operative pleading, Dkt. No. 39, and are assumed true for purposes of the City defendants' motion to dismiss.

Alexander is a forty-nine-year-old African-American man who lives at 1906 South State Street in the City of Syracuse. See Am. Compl. ¶¶ 5, 12. At the time of the events giving rise to this lawsuit, plaintiff worked for the City's Department of Public Works ("DPW"). Id. ¶ 5.

On October 24, 2016, Detective Gilhooley and other SPD officers entered Alexander's home without a warrant or his consent. Am. Compl. ¶ 12. This group of SPD officers "put [p]laintiff out of his home physically," and did not allow him to re-enter. Id. ¶ 13. Other SPD officers also "caused two of [p]laintiff's cars, [a] 2002 Ford Explorer and [a] 2006 Cadillac STS, to be towed from his home." Id. ¶ 14. Allegations found elsewhere in plaintiff's pleading suggest that the impetus for this interference with plaintiff, his home, and his property was a police investigation into accusations made by Monahan, which involved either a controlled drug buy and/or an alleged sexual assault. [2] Id. ¶¶ 24-25, 32-34.

As Alexander explains, SPD officers, presumably Detective Gilhooley, forced Monahan "into service as a confidential informant" and then instructed her to attempt to make a "controlled buy" of drugs from him. Am. Compl. ¶ 32. Plaintiff alleges that no such "buy" ever

occurred because he is not involved in any drug activity. Id. Plaintiff further alleges Monahan was "conscripted into working with [the police]." Id. ¶ 33.

In any event, the SPD officers did not allow Alexander to return to his home at all that day. See Am. Compl. ¶¶ 15-16. And when plaintiff tried to return home the next day, SPD officers continued to deny him entry. Id. ¶ 17. Plaintiff alleges that "although he informed them he hadn't committed any crimes, they continued with their actions of searching the premises without permission or plaintiff's consent." Id.

 *2 Alexander decided he would "walk across the street to a convenience store, [known as the] Middle East Market, to see if he could get a copy of the store's video surveillance, which captured the front of his residence in addition to other areas around the store." Am. Compl. ¶ 18. When plaintiff tried to cross the street to reach the store, "he was taken down by Detective Gilhooley." Id. ¶ 19. Plaintiff alleges this occurred because the detective "was aware of the surveillance video" at the store. Id. ¶ 20.

Detective Gilhooley transported Alexander to the "Criminal Investigation Division" and attempted to question him. Am. Compl. ¶ 21. When plaintiff refused to speak with him and requested an attorney, "he was told by Detective Gilhooley that because he didn't want to talk to him he would charge him." Id.

Another detective, Detective Stonecypher, walked Alexander from the "Public Safety Building" over the "Justice Center." Am. Compl. ¶ 22. According to plaintiff, Detective Stonecypher made statements "which plaintiff understood to mean that Detective Stonecypher was in on his being charged along with Detective Gilhooley." Id. ¶ 22.

Alexander was charged with a variety of drug offenses, including Criminal Possession of a Controlled Substance in the Third Degree in violation of N.Y. Penal Law § 220.16, Criminal Possession of a Controlled Substance in the Seventh Degree in violation of N.Y. Penal Law § 220.03, and three counts of Criminally Using Drug Paraphernalia in the Second Degree in violation of N.Y. Penal Law § 220.50(1)-(3). Am. Compl. ¶ 23.

At this point, Alexander alleges that Detective Gilhooley "re-interviewed" Monahan and "coerced her to make up

information." Am. Compl. ¶ 24. According to plaintiff, Monahan's "initial statement made no mention that plaintiff was involved, or even present." Id. ¶ 25. Plaintiff alleges that Monahan "was forced into another interview," where she eventually "stated that plaintiff was the black male that participated in raping her." Id.

On October 30, 2016, presumably as a result of this coerced accusation, Alexander was "falsely charged with Rape, Sodomy, and False Imprisonment." Am. Compl. ¶ 26. Plaintiff alleges that Monahan falsely identified plaintiff's home as the location of the sexual assault. Id. ¶ 34. Plaintiff further alleges he paid his bail immediately but was not released from custody until his attorney intervened on his behalf. Id. ¶¶ 26-29.

On November 7, 2016, DPW initiated workplace disciplinary proceedings against Alexander on the basis of the criminal charges filed against him. Am. Compl. ¶ 30. Plaintiff was put on a ten-day suspension. Id. According to plaintiff, the arrest and discipline also "caused the media to report slanderous and libelous statements concerning false charges to the public." Id. ¶ 31.

On August 22, 2017, the Onondaga County District Attorney's Office "admitted in open court" that (1) a surveillance tape secured from the convenience store across the street from Alexander's home and (2) the lack of forensic linking plaintiff to the charged crimes "was responsible for their motion to dismiss [the] charges." Am. Compl. ¶ 35. The criminal proceedings against plaintiff have since been terminated in his favor. Id.

### III. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.' " Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ). "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief', FED. R. CIV. P. 8(A)(2), more than mere conclusions are required." Id. "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.' " Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at

570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

**\*3**  "When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Morris v. N.Y. State Police, 268 F. Supp. 3d 342, 459 (N.D.N.Y. 2017) (quoting Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014) ). "In making this determination, a court generally confines itself to the 'facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken.' " Id. (quoting Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) ).

## IV. DISCUSSION

At the outset, the City defendants have expressed some uncertainty about the precise contours of Alexander's different state and federal law causes of action. City Defs.' Mem., Dkt. No. 42-6 at 5-6 (setting forth a spreadsheet of plaintiff's various claims). [3] This confusion is understandable. For instance, and as these defendants point out, plaintiff has mistakenly used the label "sixth cause of action" to refer to two different groups of theories of liability in his pleading. Am. Compl. ¶¶ 60-63 (labeling defamation claims as "Sixth Cause of Action"); Am. Compl. ¶¶ 64-68 (labeling emotional distress claim as "Sixth Cause of Action").

To further complicate matters, throughout his amended complaint Alexander has mostly failed to connect his various theories of liability to the particular defendant or defendants allegedly responsible for each violation. Instead, plaintiff has opted to use a "shotgun pleading," a document that makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Croons v. N.Y. State Office of Mental Health, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (citation omitted).

While this kind of pleading probably requires a smaller investment of time and fewer resources to draft and file, in the longer run it amounts to more work for everyone involved in the litigation. It leaves the defendants confused about which one of them has been sued (and for what). It requires the plaintiff to explain in other filings made during the course of the litigation "what he really meant to

say" when he drafted the pleading. And most importantly, it wastes judicial resources, since the task of sorting out all this confusion always falls squarely on the Court itself.

Based on a review of the operative pleading and his opposition memorandum, Alexander appears to be pressing what amounts to mostly standard fare for a federal civil rights lawsuit arising from a police investigation and later criminal prosecution: (1) a § 1983 claim for unlawful search and seizure of his residence; (2) a § 1983 claim for unlawful seizure of his two automobiles; (3) a § 1983 claim for false arrest; (4) a § 1983 claim for malicious prosecution; (5) a § 1983 claim for municipal liability; (6) a state law claim for false arrest; (7) a state law claim for malicious prosecution; (8) a state law claim for violations of the New York State Constitution; (9) a state law claim for infliction of emotional distress; and (10) a state law claim premised on various theories of defamation.

On the merits, the City defendants' partial dismissal motion argues that (1) most of Alexander's state law claims are barred because he failed to comply with the notice of claim requirements imposed by state and local law; (2) the malicious prosecution claims fail to allege certain necessary elements; (3) the defamation claims are not pleaded with sufficient particularity; (4) the emotional distress claim is duplicative of other, more specific theories of relief alleged in the pleading; (5) the false arrest and imprisonment claims are barred by the existence of probable cause; (6) the state constitutional claim is duplicative of other, more specific claims; (7) the City is immune from liability for punitive damages; (8) the operative pleading fails to state a § 1983 claim for municipal liability against the City; and (9) the County's cross-claims are barred because it also failed to comply with the notice of claim requirements imposed by state and local law.

### A. Notice of Claim

**\*4**  First, the City defendants argue that Alexander failed to properly serve a notice of claim "with respect to his claims for equal protection under the New York State constitution, malicious prosecution, defamation per se and/or slander, and intentional infliction [*sic*] of emotional distress." City Defs.' Mem., Dkt. No. 42-6 at 8.

Alexander responds that (1) he served two notices of claim while acting pro se; (2) each of these filings clearly assert

he was "falsely arrested and imprisoned" and his property was seized; and (3) the City cannot show it suffered any prejudice from deficiencies in these two notices and therefore the Court should exercise its discretion to disregard any defects it finds in them. Pl.'s Opp'n, Dkt. No. 49 at 3-4.

The City defendants reply that Alexander should not be allowed to pursue theories of liability that were not referenced, indirectly or otherwise, in either of his notices of claim. City Defs.' Reply, Dkt. No. 50 at 6.

"Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees." Grant v. City of Syracuse, 2017 WL 5564605, at *10 (N.D.N.Y. Nov. 17, 2017) (Kahn, J.) (citations omitted). [4]

"To pass muster, the notice must include enough information to enable the municipality to investigate the claim adequately. Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim." Nieblas–Love v. N.Y. City Hous. Auth., 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). "The fact that a cause of action not mentioned in the notice of claim arises out of the same incident as enumerated claims is not pivotal; rather, the nature of the claim and the theory of liability are determinative." Id.

Alexander's amended complaint alleges that he complied with this state law requirement by serving a notice of claim before bringing this suit. Am. Compl. ¶ 3. However, plaintiff did not attach a notice of claim to his pleading. Instead, the City defendants have submitted as exhibits the two different notices of claim they received from plaintiff. See Ex. A to Clarke Decl., Dkt. No. 42-2; Ex. B to Clarke Decl., Dkt. No. 42-3.

Generally speaking, it is inappropriate to consider matters outside the four corners of the pleading when evaluating a defendant's 12(b)(6) motion to dismiss. However, because (1) a proper notice of claim is "integral" to the state law causes of action and (2) Alexander does not appear to contest the accuracy or authenticity of the two notices supplied by the City defendants, Exhibits A and B to the Clarke Declaration are properly considered here. See, e.g., Canzoneri v. Inc. Vill. of Rockville Centre, 986 F. Supp. 2d 194, 206 (E.D.N.Y. 2013) (considering notice of claim

supplied by defendants on motion to dismiss); Fisher v. Cty. of Nassau, 2011 WL 4899920, at *3 (E.D.N.Y. Oct. 13, 2011) (evaluating sufficiency of pro se notice of claim offered by defendants).

*5 Alexander's first pro se notice of claim, which is sworn to on November 28, 2016, names as defendants the "City of Syracuse and Police Department" and states that:

> Troy Alexander hereby gives notice that I wish to bring multi lawsuits for the arrest and imprisonment and wrongful impoundment of my vehicles on October 24, 25, and October 26[,] 2016 as well as the bail money forefeited [*sic*] from such charges[.]

Ex. A to Clarke Decl., Dkt. No. 42-2.

Alexander's second pro se notice of claim, which is sworn to on September 11, 2017, adds the "Onondaga County Sheriff" and "Lashauna Monahan" as named defendants and again states that:

> Troy Alexander hereby gives notice that I wish to bring multi law suits for the arrest and imprisonment and wrongfall [*sic*] impoundment of vehicles as well as the illeagle [*sic*] search of 1906 South State St. Plaintiff's home on or about October 24th, 25th, and 26, 2016 and any and all bail money forefeited [*sic*] from such charges[.]

Ex. B to Clarke Decl., Dkt. No. 42-3.

Upon review, Alexander's state law constitutional claims, claims for defamation per se and/or slander, and claims for intentional infliction of emotional distress are barred by his failure to include them in his notice of claim. However, plaintiff's state law malicious prosecution claim is not. Callwood v. City of Kingston, 2017 WL 4357459, at *8 (N.D.N.Y. Sept. 29, 2017) (permitting state law

malicious prosecution claim to proceed despite notice of claim requirement).

Alexander correctly argues that federal courts can, and sometimes do, choose to overlook certain defects in a plaintiff's notice of claim. See, e.g., Burbar v. Inc. Vill. of Garden City, 961 F. Supp. 2d 462, 468 (E.D.N.Y. 2013) (denying motion to dismiss where plaintiff's notice of claim asserted ten claims but failed to include certain others that "arose from the same underlying arrest"); Grant, 2017 WL 5564605, at *10 (declining to find trespass and defamation claims barred where notice of claim was "thirty-nine pages and include[d] ample factual allegations regarding the events").

However, because this state law requirement is supposed to be construed "strictly," courts typically refuse to permit a plaintiff, whether pro se or counseled, to avoid dismissal of a state law theory of liability that is not even referenced in a notice of claim. Fisher, 2011 WL 4899920, at *3 (dismissing certain state law claims because of pro se plaintiff's "failure to indicate the legal theories on which Plaintiff now proceeds" in his underlying notice of claim).

This seems especially true when a plaintiff attempts to add claims for negligent or intentional infliction of emotional distress. See, e.g., Nieblas–Love, 165 F. Supp. 3d at 77 (dismissing emotional distress claims because plaintiff's notice of claim "did not implicitly or explicitly notify [the municipal agency] that he intended to pursue [these] independent tort claims"); Canzoneri, 986 F. Supp. 2d at 206-07 (dismissing emotional distress claims where plaintiff's notices of claim were "devoid of any reference to emotional distress"). Accordingly, the state law constitutional claims, the claims for defamation, and the emotional distress claims will be dismissed against the City defendants.

### B. Malicious Prosecution

**\*6** Next, the City defendants argue Alexander's malicious prosecution claims must be dismissed because he has failed to plausibly allege (1) the prosecution was initiated without probable cause; (2) the charges were terminated in his favor; or (3) any facts demonstrating actual malice. City Defs.' Mem. at 10. Plaintiff responds that Detective Gilhooley consciously ignored the exculpatory surveillance video evidence from the convenience store and chose to charge plaintiff just because he refused to cooperate with him. Pl.'s Opp'n at 5.

Generally speaking, "[c]laims of malicious prosecution arising under Section 1983 are governed by the same standard applied under state law." Frederique v. Cty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (citing Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995) ).

To prevail on a claim of malicious prosecution, a plaintiff must establish: (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice. Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003).

In addition, a § 1983 malicious prosecution claim requires that "there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." Washington v. Cty. of Rockland, 373 F.3d 310, 316 (2d Cir. 2004).

At this early juncture, Alexander's malicious prosecution claims survive dismissal. Plaintiff alleges that (1) Detective Gilhooley coerced Monahan into accusing plaintiff; (2) Detective Gilhooley then consciously ignored the exculpatory surveillance video evidence favorable to plaintiff; (3) Detective Gilhooley chose to charge plaintiff just because he refused to cooperate; (4) all of the charges were terminated in his favor; and (4) the County prosecutor admitted, in open court, that there was no evidence on which to base any charges against him. Those allegations, considered together, are sufficient to avoid dismissal right now. See, e.g., Am. Compl. ¶¶ 20-22, 35.

Alexander should note, however, that the Second Circuit has recently clarified a frequently litigated aspect of § 1983 claims for malicious prosecution brought in New York federal courts: the favorable termination element. See Lanning v. City of Glens Falls, 908 F.3d 19, 28 (2d Cir. 2018) (affirming dismissal on the pleadings of malicious prosecution claim because the termination of charges in plaintiff's case was "consistent with dismissal on any number of procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence"). If plaintiff plans to keep his federal or state law malicious prosecution claims intact following any future motion practice, he should be prepared to explain why the Second Circuit's holding in Lanning does not command their dismissal. For now, however, the City defendants' motion to dismiss plaintiff's malicious prosecution claims will be denied.

### C. Defamation

As set forth above, Alexander's various state law defamation theories are barred by New York's notice of claim requirement. Even assuming otherwise, plaintiff has failed to plead any of these theories with the requisite particularity. They are therefore also subject to dismissal on this basis.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. Generally, spoken defamatory words are slander; written defamatory words are libel." Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001) (citations and internal quotation marks omitted).

**\*7** "To prevail on a claim for either libel or slander under New York law, plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] *per se*, and (vii) not protected by privilege." Neal v. Asta Funding, Inc., 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) (citations and internal quotation marks omitted).

Alexander's amended complaint alleges in conclusory fashion that:

> The conduct of Defendants City of Syracuse and County of Onondaga as public/governmental actors to cause false information to be disseminated via media[,] both television and/or print to make false reports concerning plaintiff['s] arrest and/or charges without any basis in law or fact and without sufficient factual information.

Am. Compl. ¶ 61.

As the City defendants point out, this bare accusation fails to inform the reader about the specific information alleged to be false. Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (citation and internal quotation marks omitted) ).

It can be inferred from the parties' submissions and the general tenor of Alexander's amended complaint that his defamation claims are directed at the City and County's release of information concerning the fact of his arrest and prosecution on criminal charges.

But Alexander himself acknowledges that he was in fact arrested by Detective Gilhooley and then charged with crimes, first for drugs and then for sexual assault (albeit allegedly without sufficient evidence and/or for improper reasons or with an improper purpose). Am. Compl. ¶¶ 19, 23, 26.

Under these circumstances, Alexander cannot sustain a claim for defamation. See, e.g., Adelson v. Harris, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013) (observing that statement must be "provably false" to constitute actionable defamation)

### D. Emotional Distress

As with his defamation claims, Alexander's emotional distress claims are barred by New York's notice of claim requirement. However, plaintiff also appears to have abandoned this type of claim in his opposition submission, and for good reason: regardless of the notice of claim issue, it too is subject to dismissal.

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Romero v. City of N.Y., 839 F. Supp. 2d 588, 628-29 (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) ).

"Liability will be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " Romero, 839 F. Supp. 2d 628-29 (quoting

Howell v. N.Y. Post Co., 592 N.Y.S.2d 350, 353 (N.Y. 1993) ).

The standard for asserting an intentional infliction of emotional distress claim is "rigorous, and difficult to satisfy." Howell, 592 N.Y.S.2d at 353 (citations omitted). Indeed, an emotional distress claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citations omitted).

**\*8** As the New York Court of Appeals recognized in Howell, it has rejected every claim for emotional distress it has considered "because the alleged conduct was not sufficiently outrageous." Howell, 592 N.Y.S.2d at 353. Accordingly, "[t]hose few claims of intentional infliction of emotional distress that have been upheld [in New York] were supported by allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff." Seltzer v. Bayer, 709 N.Y.S.2d 21, 23 (N.Y. App. Div. 1st Dep't 2000).

Alexander's amended complaint makes a half-hearted attempt to adhere to this demanding standard by alleging in conclusory fashion that "defendants carried out a campaign of unreasonable search and seizures, false arrest, [and] malicious persecution [*sic*] without sufficient factual information." Am. Compl. ¶ 65.

But this pro forma language is insufficient to overcome the high bar imposed by New York law. If anything, the conduct alleged by Alexander falls squarely within the ambit of traditional tort liability. Naccarato v. Scarselli, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000) (dismissing on summary judgment plaintiff's emotional distress claim as duplicative of his more specific tort theories); see also D'Angelo–Fenton v. Town of Carmel, 470 F. Supp. 2d 387, 400 (S.D.N.Y. 2007) (dismissing emotional distress claims against police officers and municipal entity).

### E. False Arrest & Imprisonment

The City defendants argue Alexander's false arrest claims must be dismissed because he has failed to plead a lack of probable cause. City Defs.' Mem. at 15. Plaintiff responds that he has sufficiently alleged a § 1983 claim for false arrest and a related state law claim for false arrest and imprisonment based on his specific allegations of conduct attributable to Detective Gilhooley. Pl.'s Opp'n at 7.

Claims for "false arrest" and "false imprisonment" are "synonymous" under New York law, and both are "substantially the same" as a § 1983 claim for false arrest. Jackson v. City of N.Y., 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013).

"Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015).

"A police officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " Jackson, 939 F. Supp. 2d at 249 (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) ).

Upon review, Alexander's state and federal false arrest claims survive dismissal. At this early stage of the proceedings, it cannot be determined whether probable cause existed to arrest plaintiff. See, e.g., Jurkowitsch v. City of N.Y., 2015 WL 8489964, at *5 (E.D.N.Y. Dec. 9, 2015) ("[A]t this stage of the proceedings, it is impossible to determine whether [defendants] had probable cause to arrest Plaintiff, and the Court declines to decide this issue based on the pleadings alone.").

**\*9** After all, under certain circumstances an officer's awareness of facts supporting a defense—such as knowledge of the existence of exculpatory surveillance footage—can even eliminate probable cause. See, e.g., Folk v. City of N.Y., 243 F. Supp. 3d 363, 372 (E.D.N.Y. 2017) (collecting cases). It is too early to make those determinations here. Accordingly, the City defendants' motion to dismiss plaintiff's state and federal false arrest claims will be denied.

### F. New York Constitutional Tort

The City defendants argue Alexander's claims under the New York State Constitution should be dismissed because they are duplicative of other, more specific remedies available to him. City Defs.' Mem. at 16.

Defendants are correct. "Where, as here, adequate remedies are available under § 1983, a plaintiff has no private right of action under the New York State Constitution." Wierzbicki v. Cty. of Rensselaer, N.Y., 2015 WL 4757755, at *6-*7 (N.D.N.Y. Aug. 12, 2015) (Sharpe, J.) (citation and internal quotation marks omitted); see also Krug v. Cty. of Rensselaer, 559 F. Supp. 2d 223, 248 (N.D.N.Y. 2008) (McAvoy, J.) ("Because all state constitutional law claims are also asserted as Section 1983 claims, all such claims are dismissed.").

### G. Municipal Liability

The City defendants argue that Alexander has failed to plausibly allege a claim for municipal liability under § 1983. City Defs.' Mem. at 18-20. As defendants put it, "the complaint is light on facts and heavy on conclusory, boilerplate language." Id. at 20. Plaintiff responds by invoking the City's ongoing refusal to work with the Civilian Review Board. Pl.'s Opp'n at 9.

"Before a municipality can be held liable under § 1983, it must be shown to have been 'the moving force of the constitutional violation.' " Carmichael v. City of N.Y., 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) ); see also Cash v. Cty. of Erie, 654 F.3d 324, 341-42 (2d Cir. 2011) (equating "moving force" with "proximate cause").

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or a statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.' " Cowan v. City of Mt. Vernon, 95 F. Supp. 3d 624, 643 (S.D.N.Y. 2015) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997) ). Importantly, this element "can only be satisfied where a plaintiff proves that a 'municipal police of some nature

caused a constitutional tort.' " Roe, 542 F.3d at 36 (citation omitted). However, a "municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash, 654 F.3d at 334; see also Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) ("The policy or custom need not be memorialized in a specific rule or regulation.").

"Accordingly, a plaintiff may satisfy this fifth element with evidence of: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.' " Benacquista v. Spratt, 217 F. Supp. 3d 588, 599-600 (N.D.N.Y. 2016) (quoting Cowan, 95 F. Supp. 3d at 637).

**\*10** The City defendants have the better of this argument. This Court is well familiar with the contours of § 1983 Monell liability. See, e.g., Grant, 2017 WL 5564605, at *15-*16 (denying summary judgment on municipal liability claim against the City of Syracuse); Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 500-502 (N.D.N.Y. 2017) (articulating on summary judgment a theory of municipal liability premised on a widespread failure to discipline SPD officers).

But neither Hulett nor Grant stand for the proposition that the City is somehow now on the hook as a named defendant in every § 1983 action that involves one or more members of the Syracuse Police Department. "Even at the motion-to-dismiss stage, a plaintiff cannot merely assert the existence of a municipal policy or custom in conclusory terms, but rather must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Benacquista, 217 F. Supp. 3d at 600 (citation and internal quotation marks omitted).

Alexander's amended complaint fails to plausibly establish an all-important link in the causal chain leading to Monell liability. Among other things, plaintiff has failed to demonstrate how the alleged misconduct

by Detective Gilhooley and/or the other unnamed, unidentified officers that took place on this occasion was caused or encouraged by a policy or custom attributable to the municipality itself. Instead, plaintiff has made only generalized accusations about the strained relationship between SPD leadership and the City's Civilian Review Board. These kind of conclusory allegations are insufficient to survive a motion to dismiss. Accordingly, the City defendants' motion to dismiss the § 1983 claim for municipal liability against the City will be granted. [5]

### H. The County's Cross-Claim

Finally, the City defendants argue the County's cross-claim must be dismissed because it too failed to properly serve a notice of claim. City Defs.' Mem. at 21-22. The County responds that a notice of claim is not required where, as here, another municipal entity merely seeks to assert a cross-claim for an apportionment of tort liability. County Def. Mem., Dkt. No. 48-1 at 4.

For now, this motion will be denied. Generally speaking, "[a]n action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." Wolongevicz v. Town of Manlius, 2018 WL 3769857, at *19 (N.D.N.Y. Aug. 8, 2018) (Sannes, J.) (citations omitted).

However, the only apparent basis on which this cross-claim might ever become relevant is on Alexander's *state law* false arrest or *state law* malicious prosecution claims. Thomas v. City of Troy, 293 F. Supp. 3d 282, 301 (N.D.N.Y. 2018) (Suddaby, J.) (explaining that cross-claims for contribution cannot be asserted to mitigate § 1983 liability).

Even then, it is unclear how either of these claims will ultimately satisfy the "same injury" requirement. Although Alexander makes general references to the Onondaga County District Attorney's Office and to Assistant District Attorney Maureen Berry ("ADA Berry"), Am. Compl. ¶ 7, it is unclear on what basis plaintiff might seek to pursue a claim against the County that would overlap with his remaining claims against the City defendants.

*11 Notably, Alexander has not named ADA Berry as a defendant, presumably because he is aware of the broad immunity from individual § 1983 liability afforded to prosecutors. Flagler v. Trainor, 663 F.3d 543, 546 (2d Cir. 2011) ("Prosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case."); see also Opuku v. Cty. of Suffolk, 123 F. Supp. 3d 404, 416 (E.D.N.Y. 2015) (internal quotation marks and citation omitted) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate."). In any event, it is sufficient for now to observe that the County has answered plaintiff's operative complaint, a fact which renders these ruminations on apportionment of liability academic.

### V. CONCLUSION

Alexander's § 1983 claims against Detective Gilhooley for unlawful search and seizure, false arrest, and malicious prosecution remain for discovery. So too do plaintiff's state law claims against the City defendants for false arrest and malicious prosecution. See, e.g., Fiedler v. Incandela, 222 F. Supp. 3d 141, 169 (E.D.N.Y. 2016) ("Unlike claims arising under Section 1983, a municipality may be vicariously liable for the common law torts of its employees."). However, plaintiff's § 1983 claims against the City must be dismissed. So too must his state law claims for defamation, emotional distress, and violations of the constitution against both City defendants.

To the extent he has alleged facts plausibly giving rise to liability, Alexander's various claims still remain against the County (which has filed an answer) and Monahan (who has not). Indeed, there is currently a motion for default judgment pending against Monahan. That motion must be denied. Plaintiff's original complaint is no longer the operative pleading and therefore Monahan's default on the prior pleading should be vacated as moot. See, e.g., Allstate Ins. Co. v. Yadgarov, 2014 WL 860019 at *8 (E.D.N.Y. Mar. 5, 2014) (collecting cases).

Alexander should take note that the bulk of the legal theories pleaded in his amended complaint are not cognizable against a cooperating witness, or even a confidential informant who is "pressed into service" by the police, as plaintiff alleges Monahan was here. Cf. McLaughlin v. Barron, 2018 WL

1872535, at *3-*4 (S.D.N.Y. Jan. 24, 2018) (Report & Recommendation) (declining to award damages against defaulting defendants based on § 1983 due to failure to satisfy state action requirement), adopted by 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018).

Alexander is advised to consider voluntarily discontinuing this action against Monahan. If, however, plaintiff plans pursues a renewed default judgment against this particular defendant, he should be prepared to explain in significant detail how the facts alleged in his operative pleading render Monahan liable under the particular circumstances of this case.

Therefore, it is

ORDERED that

1. The City defendants' partial motion to dismiss is GRANTED in part and DENIED in part;

2. Plaintiff's state law defamation, emotional distress, and constitutional claims are DISMISSED against the City of Syracuse and Detective Gilhooley;

3. Plaintiff's § 1983 municipal liability claims against the City of Syracuse are DISMISSED;

4. Plaintiff's § 1983 claims for search and seizure, false arrest, and malicious prosecution REMAIN for discovery;

5. Plaintiff's state law claims for false arrest and malicious prosecution REMAIN for discovery;

6. The City defendants' motion to dismiss the County's cross-claim for apportionment of state law tort liability is DENIED;

7. Alexander's motion for entry of default judgment against defendant Monahan is DENIED;

**\*12** 8. The Clerk's entry of default against defendant Monahan is VACATED;

9. The City defendants shall file and serve an answer to plaintiff's operative pleading; and

10. The Clerk of the Court is directed to amend the docket report to conform with the instructions in footnote 1.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2018 WL 6591426

---

Footnotes

1    The electronic docket report maintained by the Court for this action contains several errors that appear to have been generated internally. These include, but are not limited to, an entry that indicates Detective Gilhooley has filed a cross-claim against himself. The Clerk of the Court will be directed to amend the docket sheet to conform with the caption set forth here.

2    At some point during this process, Tereia Duff ("Duff"), a resident in Alexander's home, "was found with marijuana, and drugs near her that they attempted to attribute to plaintiff" even though they did not see any drugs "upon their initial sweep of the premises." Am. Compl. ¶ 15.

3    Pagination corresponds with CM/ECF.

4    The Departments of the New York Appellate Division are currently split on the issue of whether or not an individual must be specifically named in a plaintiff's notice of claim before being sued as an individual defendant in a subsequent civil action. Compare Goodwin v. Pretorius, 962 N.Y.S.2d 539, 545 (N.Y. App. Div. 4th Dep't 2013) ("If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement."), with Cleghorne v. City of N.Y., 952 N.Y.S.2d 114, 117 (N.Y. App. Div. 1st Dep't 2012) ("[T]he action cannot proceed against the individual defendants because they were not named in the notice of claim."). Because the New York Court of Appeals is likely to adopt the Fourth Department's reasoning in Goodwin, the more lenient rule will be applied here. See, e.g., Bailey v. City of N.Y., 79 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (noting department split but adopting the Fourth Department's conclusion).

5    The City defendants contend that Alexander's request for punitive damages must be dismissed to the extent it is asserted against the City itself (as opposed to Detective Gilhooley) in connection with one or more § 1983 claims. However, because the § 1983 claims against the City will be dismissed, it is unnecessary to resolve this question right now.

**Alexander v. City of Syracuse, Slip Copy (2018)**

2018 WL 6591426

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Vincent v. Sitnewski, S.D.N.Y., June 25, 2015

2011 WL 4344203

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Sherry BENDER, pro se, Plaintiff,

v.

CITY OF NEW YORK, et. al., Defendants.

No. 09 CV 3286(BSJ).

|

Sept. 14, 2011.

*Memorandum & Order*

BARBARA S. JONES, District Judge.

**\*1** Before the Court are six motions to dismiss the Amended Complaint of *pro se* Plaintiff Sherry Bender. For the reasons set forth below, the motions are GRANTED in part and DENIED in part.

## BACKGROUND

The present case has a long and complicated procedural history spanning numerous docket numbers and complaints. Plaintiff's many lawsuits against various individual and official defendants stem from her years-long feud with the 11th St. Bar, an allegedly illegal tavern operating next door to her apartment. Plaintiff alleges that her efforts to call attention to the bar's illegal status have led to numerous retaliatory incidents of false arrest and malicious prosecution, as well as frequent violations of her state and federal constitutional rights. Plaintiff alleges that the many harms she has experienced are the result of a conspiracy among local zoning officials, members of the New York City Police Department, city prosecutors, other government officials and the bar's owners.

Defendants here seek dismissal of Plaintiff's amended complaint, which spans 159 pages and 545 paragraphs pleading 34 causes of action against at least 58 named and additional unnamed defendants. The amended complaint seeks to "supplement" Plaintiff's 61 page complaint

(referred to here as the "original complaint") consisting of 220 paragraphs of allegations. It is worth noting that this Plaintiff has previously filed at least three other complaints, in case numbers 08 civ. 331, 08 civ. 332, and 08 civ. 5816, that were dismissed for failure to comply with the Court's order to file an amended complaint. [1]

As an initial matter, Plaintiff's unwieldy complaint violates the mandates of Rule 8(a) of the Federal Rules of Civil Procedure that a complaint contain a "short and plain statement" of those facts entitling a plaintiff to relief. This rule was instituted "because unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Shabtai v. Levande,* 38 Fed. Appx. 684, 686 (2d Cir.2002) (internal quotations and citations omitted). Plaintiff's unwieldy complaint is especially troublesome because she has had numerous opportunities to file new and amended complaints throughout her many lawsuits. Further, her styling of the amended complaint as a "supplement" to her earlier complaint would require this Court to examine hundreds of pages of allegations to construe her claims in the strongest possible light. For this reason, the Court will rely primarily on the allegations as plead in Plaintiff's lengthy amended complaint. Where a cause of action is only pled in her "original" complaint, the Court will accept the allegations as plead there. In all other instances, Plaintiff's 155 pages of allegations in her amended complaint should be more than sufficient to adequately state her claims.

Because Plaintiff is pro se, this Court has interpreted Plaintiff's claims to make the strongest arguments they can plausibly suggest. *Morpurgo v. Incorporated Village of Sag Harbor,* 697 F.Supp.2d 309, 322 (E.D.N.Y.2010). However, this Court is also mindful that claims of a conspiracy to violate the civil rights of an individual are "so easily made and can precipitate such protracted proceedings with such disruption of governmental functions" that detailed fact pleading is required to withstand a motion to dismiss. *Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981). As the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

**\*2** Given the length of Plaintiff's many allegations, the Court will only provide a limited factual background as required to analyze the issues raised by the present motions.

## LEGAL ANALYSIS

**1. Claims under 42 U.S.C. §§ 1985 and 1986**

As an initial matter, Plaintiff pleads various causes of action (including but not limited to her second, third, and seventh causes of action) pursuant to 42 U.S.C. §§ 1985 and 1986 for conspiracy by various defendants for deprivation of her constitutional rights and for failure to act to remedy these violations. To state a claim for conspiracy to violate her constitutional rights under 42 U.S.C. § 1985, a Plaintiff must allege "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.,* 7 F.3d 1085, 1088 (2d Cir.1993). Here, Plaintiff has not alleged that the alleged constitutional violations took place because of a racial or class-based discriminatory animus. Therefore, Plaintiff has failed to state a cause of action as to her claims under 42 U.S.C. § 1985 and these claims are dismissed.

Because § 1986 provides a cause of action against anyone with knowledge of a § 1985 violation who neglects to act despite the power to provide relief, a § 1986 claim must be predicated upon a valid § 1985 claim. Therefore, Plaintiff's failure to state a cause of action under § 1985 also requires dismissal of her claims pursuant to § 1986.

**2. Claims under Federal Criminal Statutes**

Plaintiff also makes numerous claims based on violations of federal criminal statutes, including fraud in violation of 18 U.S.C. § 1341, conspiracy in violation of 18 U.S.C. §§ 241–42, witness tampering in violation of 18 U.S.C. §§ 1512–13, and misprision of felony under 18 U.S.C. § 4. These federal criminal statutes do not provide a private right of action. *See Zahl v. Kosovsky,* 2011 WL 779784, at \* 10 (S.D.N.Y. March 3, 2011) (no private right of action pursuant to 15 U.S.C. § 1512); *Wright v. Waterside Plaza LLC,* 2008 WL 872281, at \*2 (S.D.N.Y. Apr.2, 2008) (generally no private right of action for federal criminal statutes, specifically mentioning 18 U.S.C. §§ 1513, 1341);

*Bender v. General Services Admin.,* 2006 WL 988241, at \*1 (S.D.N.Y. Apr.14, 2006) (no private right of action under 18 U.S.C. §§ 241, 242); *Carvel v. Ross,* 2011 WL 856283, at \*12 (S.D.N.Y. Feb.16, 2011) (no private right of action for misprision of felony). Therefore, Plaintiff's claims under these federal criminal statutes are dismissed.

**3. False Arrest and False Imprisonment Claims under 42 U.S.C. § 1983**

Plaintiff asserts claims for false arrest and false imprisonment against the City of New York and numerous named and unidentified police defendants.

*Standard for Claims under 42 U.S.C. § 1983*

Section 1983 states provides in part that

> [e]very person who, under color of any statutes, ordinance, regulation, custom or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured.

**\*3** 42 U.S.C. § 1983. To state a claim under Section 1983, a plaintiff must show: "(1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages." *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008). [2] Section 1983 itself does not require any intent to violate constitutional rights; only where the underlying constitutional violation requires a showing of intent must a plaintiff demonstrate that the deprivation was intentional. *Hudson v. New York City,* 271 F.3d 62, 68 (2d Cir.2001). Further, to succeed on a Section 1983 claim, a plaintiff must establish causation by showing that "defendants participated in, or were 'moving forces' behind, the deprivation." *Jeffries v. Harleston,* 21 F.3d 1238, 1247 (2d Cir.1994), *vacated and remanded on other grounds,* 513 U.S. 996, 115 S.Ct. 502, 130 L.Ed.2d 411 (1994).

*False Arrest and False Imprisonment*

Bender v. City of New York, Not Reported in F.Supp.2d (2011)
Case 5:19-cv-00305-TWD   Document 5   Filed 05/06/19   Page 23 of 52
2011 WL 4344203

Causes of action for false arrest are a "species of false imprisonment" and therefore are subject to the same legal analysis. *Hargroves v. City of New York,* 411 Fed. Appx. 378, 382 (2d Cir.2011). Under New York law, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 118 (2d Cir.1995). Though Plaintiff pleads her false arrest and false imprisonment claims as separate causes of action, the Court will consider them together.

The existence of probable cause is a complete defense to an action for false arrest, even where a person is ultimately acquitted. *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1995). Probable cause exists where the arresting officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer,* 63 F.3d at 119 (internal citations and quotations omitted). The probable cause inquiry focuses on the information available to the officer at the time of arrest; an officer's subjective intent is irrelevant. *Espada v. Schneider,* 522 F.Supp.2d 544, 552 (S.D.N.Y.2007).

Each claim will be considered in turn.

### March 8, 2006 and March 15, 2006 [3]

Plaintiff alleges that Defendants Detective Corcoran, P.O. Svenstrup, and P.O. Berol falsely arrested her on March 8 and March 15, 2006 without probable cause and in retaliation for her complaints against the alleged illegal bar. She further alleges that after the officers caused EMS to transport her to Bellevue Hospital for a psychiatric evaluation, the officers made false statements to Bellevue's staff that caused the doctors to retain her overnight all in violation of her constitutional rights under the Fourth Amendment. Defendants counter that probable cause existed for both arrests.

**\*4** Plaintiff here alleges that Defendants Corcoran, Berol and Svenstrup provided false information to EMS, entered her apartment "under threat of physical force, and falsely accused her of displaying symptoms of serious mental illness." (Original Complaint ¶¶ 53– 88.) Construing Plaintiff's claims liberally and accepting her allegations as true, plaintiff has plead sufficient

facts to allege that the officers arrested her without probable cause. Therefore, she has sufficiently stated claims for false arrest and false imprisonment under § 1983 against Defendants Svenstrup, Berol and Corcoran, and Defendants' motion to dismiss these claims is denied.

### September 15–16, 2006

Plaintiff alleges that her arrest and subsequent imprisonment on September 15–16, 2006 also violated her constitutional rights under the Fourth Amendment. Plaintiff alleges that, after suffering from "harassment" by her neighbor (Defendant Samolsky), she heard Samolsky "speaking with police on his cell phone outside Plaintiff's door." [4] Plaintiff then left her apartment, walked outside onto the street, and moments later was arrested by several New York City police officers, including Defendants Mahoney and Corcoran, without a warrant. (Am.Compl.¶¶ 145–46.) When asked why she was arrested, Plaintiff alleges that the officers informed her that she was being charged with "false reports ... 268 counts;" Plaintiff asserts that the 311 calls she made were not false reports but "legitimate" complaints and that she made no 311 or 911 calls on that day. (Am.Compl.¶¶ 145, 159.) Plaintiff asserts that this arrest was without probable cause because it stemmed from the ongoing harassment of Plaintiff by NYPD officers under the command of Defendant Corcoran, in collusion with Defendant Samolsky. (Am.Compl.¶ 389).

Interpreting Plaintiff's complaint broadly in light of her *pro se* status and accepting the facts pled as true, Plaintiff has sufficiently alleged that officers Corcoran, Mahoney and Svenstrup all participated in her arrest without probable cause as part of their ongoing harassment of her and in retaliation for her complaints against the bar. Therefore, Plaintiffs' motions to dismiss these claims are denied.

### September 18, 2007

Plaintiff next claims that her arrest on September 18, 2007 by police Defendants DeQuatro, Corcoran, Mahoney and Svenstrup violated her constitutional rights because it was premised on an "illegal warrant" and lacked probable cause. (Am.Compl.¶ 448). However, where an arrest is made pursuant to a warrant, there can be no claim for false arrest or wrongful imprisonment. This is true even where a plaintiff claims that the warrant was obtained on the basis of deliberate misrepresentations

by defendants. *Jones v. Trump,* 971 F.Supp. 783, 788–89 (S.D.N.Y.1997). As Plaintiff has alleged that she was arrested pursuant to a warrant, her claim for false arrest and subsequent false imprisonment on September 18, 2007 must fail. To the extent Plaintiff's claim for false arrest is premised upon Defendant Corcoran's role in obtaining the allegedly illegal warrant, Plaintiff's remedy would be a claim for malicious prosecution, as discussed further below. *See Williams v. Young,* 769 F.Supp.2d 594, 602 (S.D.N.Y.2011).

*March 24, 2008*

**\*5** Plaintiff alleges that she was falsely arrested on March 24, 2008 by Detective Gomez in the New York County Criminal Courthouse. She asserts that Detective Gomez "falsely arrested" her in collusion with two other defendants (Samolsky and Meadows) who had been harassing her and had obtained orders of protection against her on that same day. (Am.Compl.¶¶ 209, 469–73.) However, Plaintiff fails to specify any conduct by Gomez that would be sufficient to draw the inference that he colluded with Samolsky and Meadows and arrested her without probable cause. Rather, according to Plaintiff's complaint, he relied on the complaints of the victims of the alleged crimes, which is considered a presumptively reliable basis for finding probable cause. *See Miloslavsky v. AES Engineering Soc., Inc.,* 808 F.Supp. 351, 355 (S.D.N.Y.1992). Further, in Plaintiff's own complaint, she contends that the arrest "originated with the prosecutor Reynolds," not Gomez. (Am.Compl.¶ 472.) Plaintiff's complaint is devoid of any allegation of Gomez's involvement except that he was the officer who physically arrested Plaintiff. Plaintiff's conclusory allegations that the arrest was illegal and the result of collusion with the alleged victims are insufficient to plead a claim for false arrest or false imprisonment. Therefore, this claim is dismissed.

### 4. Unlawful Search Claims under 42 U.S.C. § 1983

*September 18, 2007*

Reading the complaint liberally, Plaintiff pleads a claim for the illegal search of her apartment, which she terms a violation of her privacy rights. Plaintiff claims that police Defendants Corcoran, DeQuatro, Hernandez, and Torres unlawfully searched her home pursuant to a warrant issued by Judge Ross on September 11, 2007. (Am.Compl.¶ 185.) Where a police officer relies on good

faith upon a warrant issued by a neutral and detached magistrate upon a finding of probable cause, that officer is "presumptively shielded by from personal liability for damages." *Spafford v. Romanowsky,* 348 F.Supp.2d 40, 46 (S.D.N.Y.2004) (citing *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991). However, if an officer "knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause," he may be liable under § 1983. *Id.* (internal quotations omitted). Here, Plaintiff makes no allegations that Defendants DeQuatro, Hernandez, and Torres had any knowledge that the warrant was allegedly "illegal," and therefore Plaintiff's claims against them fail.

As to Defendant Corcoran, Plaintiff has sufficiently alleged that Corcoran supplied false information which led to the issuance of the search warrant. Accepting these facts as true for the purposes of this motion only, Plaintiff has adequately plead a claim for illegal search in violation of the Fourth Amendment against Defendant Corcoran.

Further, Plaintiff alleges that she was unlawfully strip searched upon her arrest on September 18, 2007 by a "not yet named female officer of the 9th Precinct." (Am.Compl.¶ 462.) To comply with the Fourth Amendment, the strip search of a defendant in custody must be reasonable in light of the circumstances, including the scope of the particular intrusion, the manner in which such search was conducted, the justification for initiating the strip search, and the place it was conducted. *Jean–Laurent v. Wilkerson,* 438 F.Supp.2d 318, 323 (S.D.N.Y.2006). Here, Plaintiff alleges that she was strip searched without good cause as a means of further harassment. Accepting these allegations as true, Plaintiff's claim is sufficient to survive a motion to dismiss. [5]

### 5. Excessive Force Claims under 42 U.S.C. § 1983

*September 15 and 16, 2006*

**\*6** Plaintiff alleges that she was subject to excessive force by two defendants during her arrest and transfer by Defendants Echavarria and Svenstrup, as well as unnamed "individual police defendants."

To establish a constitutional claim for excessive force, a plaintiff must allege conduct that was "objectively unreasonable" in light of the circumstances. *Lynch v. City of Mount Vernon,* 567 F.Supp.2d 459, 467 (S.D.N.Y.2008).

Defendant Ecchavarria allegedly "handcuffed the defendant extremely tightly for nearly fourteen hours leaving indentations in plaintiff's forearms for over six hours." (Am.Compl.¶ 412.) Courts in this circuit have consistently found that "tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch,* 567 F.Supp.2d at 467. Here, Plaintiff specifically alleges that the discomfort experienced from the handcuffing lasted for six hours. This qualifies as the kind of "temporary discomfort" that courts have consistently found cannot constitute a claim for excessive force. Therefore, this claim is dismissed.

As to the allegations against the "individual police defendants" that Plaintiff has failed to name or describe, she claims these individuals "turn [ed] plaintiff upside down, handcuff[ed] her multiple times, [and] physically assault[ed] the plaintiff." (*Id.*) Without more detail as to the harm she suffered or the circumstances of this alleged "assault," the Court cannot find that Plaintiff has plead a plausible claim for excessive force. Therefore, this claim is also dismissed.

Additionally, Plaintiff alleges that immediately after her arrest, while putting her into the patrol car, Defendant Svenstrup "gave a definitive yank back and forth to [her] left thumb." Plaintiff asserts that this was "wholly unprovoked" and that she was tightly handcuffed during the incident. Svenstrup's conduct allegedly caused a tear in the ulnar collateral ligament of Plaintiff's left thumb and eventually required surgery. (Am.Compl.¶ 146.) Such an injury, if true, could give rise to a claim for excessive force. Therefore, taking these allegations as true, Plaintiff has adequately plead a claim for excessive force against Defendant Svenstrup.

**6. Malicious Prosecution Claims under 42 U.S.C. § 1983**
Plaintiff alleges claims for malicious prosecution related to her arrests on September 15, 2006, September 18, 2007, and March 24, 2008.

*Police Defendants*
Reading Plaintiff's complaint liberally, Plaintiff may have intended to plead a claim for malicious prosecution against the police defendants for their role in the prosecutions subsequent to her three arrests. To state a claim for malicious prosecution, a plaintiff must allege

the initiation of a criminal proceeding, the termination of the proceeding in Plaintiff's favor, a lack of probable cause for commencing the proceeding, and actual malice as motivation for defendant's actions. *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995). Courts have found that individuals other than prosecutors may be subject to claims for malicious prosecution where such individuals actively participated in the prosecution. For instance, plausible claims against police officers have been plead where a plaintiff alleges that the officer created false information and forwarded it to prosecutors, or completed complaining or corroborating affidavits used in the criminal prosecution. *Espada v. Schneider,* 522 F.Supp.2d 544, 553 (S.D.N.Y.2007).

**\*7** Plaintiff's complaint, while full of general allegations regarding a conspiracy to retaliate against her, is largely devoid of specific allegations of any police officer participating in her prosecution. However, Plaintiff does allege that Defendant Corcoran, along with Defendant ADA Reynolds, obtained an illegal warrant to search her home and to arrest her. (Am.Compl.¶ 185, 446.) As mentioned above, while Plaintiff styles this a false arrest claim, such claims are properly assessed as claims for malicious prosecution. *Williams,* 769 F.Supp.2d at 602. Plaintiff thus alleges that Corcoran knowingly provided false testimony, in concert with the prosecutor, causing Plaintiff to be arrested pursuant to a warrant and eventually prosecuted. *See Komlosi v. Fudenberg,* 2000 WL 351414, at *10 (S.D.N.Y. Mar.31, 2000). As Plaintiff has adequately pled the other elements required to state a claim for malicious prosecution, the Court finds that Plaintiff's claim for malicious prosecution against Defendant Corcoran survives this motion to dismiss. [6]

*District Attorney's Office Defendants*
Plaintiff also alleges that her malicious prosecution by ADA Reynolds and former District Attorney Robert Morgenthau violated her constitutional rights pursuant to § 1983.

Plaintiff's allegations detail the allegedly "vindictive" and intentionally malicious conduct of ADA Reynolds in repeatedly prosecuting Plaintiff. Plaintiff alleges that Reynolds made misrepresentations regarding evidence to Judge Gibbons and generally engaged in improper and biased prosecution of her while failing to prosecute those responsible for the nuisance created by the illegal bar.

While § 1983 "imposes liability upon 'every person' who deprives another of a constitutional right under color of state law, the doctrines of absolute and qualified immunity shield prosecutors and law enforcement officers from liability related to their official acts." *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990). Prosecutors are absolutely immune from liability for acts within the scope of their duties in "initiating and pursuing a criminal prosecution." *Id.* Only if a prosecutor acts act beyond his or her "jurisdictional limits" does the prosecutor lose this absolute immunity. *Barr,* 810 F.2d at 361. The Second Circuit has held that where a prosecutor acts in an "investigative" or "administrative" capacity and in the "clear absence of all jurisdiction" does he or she lose absolute immunity. *Id.* This is true even where a plaintiff alleges that the prosecutor acted for purposes of retaliation or knowingly used perjured testimony. *Shmueli v. City of New York,* 424 F.3d 231, 237 (2d Cir.2005). "These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy." *Id.* at 238.

Here, Plaintiff's exhaustive allegations against ADA Reynolds and former District Attorney Morgenthau contain many general allegations about Reynolds' alleged impropriety in bringing repetitive criminal charges, mischaracterizing evidence, and generally conspiring against her for the benefit of the bar owners. However, Plaintiff's allegations lack any mention of Reynolds engaging in administrative or investigative functions. Conclusory allegations that defendants went "beyond the scope of their jurisdiction, without authority of law" are insufficient to withstand a motion to dismiss. (Am.Compl.392). Furthermore, Plaintiff's allegations that Reynolds participated in the procurement of arrest and search warrants leading to her arrest are insufficient to pierce Reynolds' absolute prosecutorial immunity under Second Circuit case law. [7] *Id.* at 362. For these reasons, Defendants Morgenthau and Reynolds are absolutely immune from liability under § 1983, and Plaintiff's claims for malicious prosecution against them are dismissed. [8]

### 7. Abuse of Process under 42 U.S.C. § 1983

**\*8** Plaintiff additionally pleads a claim for "official misconduct, misuse of process" against Defendants Corcoran, Torres, and Reynolds. (Am.Compl.¶ 457.) Under New York law, to adequately allege a claim of malicious abuse of process a plaintiff must plead: "(1) defendants employed regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Jovanovic v. City of New York,* 2006 WL 2411541, at *11 (S.D.N.Y. Aug.17, 2006). This cause of action can give rise to a claim under § 1983. *Id.* Here, Plaintiff's lengthy complaint only alleges Defendants Corcoran and Reynolds played any role in obtaining any "legal process" to use against her; Defendant Torres is only alleged to have participated in the search of Plaintiff's apartment.

As discussed above, Reynolds is absolutely immune from claims related to her use of legal process. Therefore, Plaintiff has only plead a claim for malicious abuse of process by Defendant Corcoran related to his allegedly false testimony proffered to obtain a search and arrest warrant. Though her allegations are largely conclusory, as this Court must liberally construe her claims to allege the strongest possible arguments, Plaintiff has sufficiently alleged that Corcoran had a "collateral motive" for participating in the arrest under the warrant, specifically to benefit the 11th St Bar and retaliate against Plaintiff for her efforts to close the bar. *See Id.* at *12, n. 4 (discussing plausible "collateral motives" that have been held sufficient to plead a claim for abuse of process).

### 8. Due Process Claims under 42 U.S.C. § 1983

Plaintiff's additionally alleges that her due process rights were violated during her September 15–16, 2006 arrest by Sgt. Acevedo and other officers. While Plaintiff styles this a due process claim, the Court is unable to discern the basis for Plaintiff's cause of action under any due process rights. Plaintiff's claims are therefore construed as claims for harassment constituting excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983 and prolonged confinement in violation of the Fourth, Fifth and Fourteenth Amendments.

In support of her harassment claims, Plaintiff alleges that the officers ordered that Plaintiff be taken to a psychiatric facility because "we don't house psychs here." (Am.Compl.¶¶ 154–54.) She further asserts that the officers caused her to be repeatedly transferred between police precincts, Bellevue, and Elmhurst Hospital, threatened to shackle her, and deliberately caused her suffering and fear. (*Id.*) However, the bulk of Plaintiff's

allegations against Acevedo and the other unnamed officers are merely threats. As a matter of law, verbal abuse, including threatening language and gestures, cannot amount to constitutional violations. *Smith v. Fields,* 2002 WL 342620, at *5 (S.D.N.Y. Mar.4, 2002).

 **\*9** In support of her prolonged confinement claim, Plaintiff alleges that Acevedo was responsible for her delayed arraignment because he sent her to Bellevue and Elmhurst Hospitals for a psychiatric evaluation and generally caused her to be transported numerous times during her confinement. Plaintiff has not alleged sufficient facts regarding Sgt. Acevedo's conduct for this Court to reasonably infer that he should be held responsible for any delays in her arraignment. Therefore, Plaintiff's allegations of due process violations against Acevedo and other officers are dismissed.

To the extent Plaintiff has made a more general claim that her alleged 31 hour confinement on September 15 and 16, 2006 itself constituted a violation of her due process and Fourth Amendment rights, this claim also fails because Plaintiff's pre-arraignment detention was less than 48 hours. *See Simmons v. Kelly,* 2009 WL 857410, at *6 (S.D.N.Y. Mar.31, 2009) (pre-arraignment detentions of up to forty-eight hours do not constitute violations of the Fourth Amendment).

**9. Claims against Dr. Jennifer Rosner, Dr. Richard Rosner, and Dr. Ankur Saraiya under 42 U.S.C. § 1983**
Plaintiff alleges a claim for "conspiracy against rights, obstruction, depraved indifference, recklessness, and malpractice" against the three doctor defendants who conducted her forensic competency exam at Bellevue Hospital, as ordered by Judge Gibbons on March 24, 2001. Plaintiff alleges that the doctors were "rude," "asked inappropriate questions," refused to allow her to use the bathroom, and were otherwise "harassing" in their interview. (Am.Compl.¶ 221.) Plaintiff further alleges that the doctors' diagnoses that she was "unfit, incapacitated, mentally diseased, and unfit to stand trial" were willfully false and constituted medical malpractice. Defendants allegedly lied on the witness stand at her criminal competency hearing. (Am.Compl.¶ 279.)

Claims for medical malpractice are governed by state law. As such, "allegations of malpractice will not suffice to support an action under 42 U.S.C. § 1983." *Warheit v. City of New York,* 2006 WL 2381871, at *10 (S.D.N.Y.

Aug.15, 2006) (internal quotations and citations omitted). Therefore, Plaintiff cannot state federal causes of action under § 1983 for medical malpractice. Furthermore, accepting all of Plaintiff's allegations against the doctors as true, Plaintiff has not alleged any conduct that could rise to the level of a constitutional violation; experiencing "rude" and unpleasant behavior, and disagreeing with the conclusions of a medical expert, do not allege a sufficient deprivation of Plaintiff's constitutional rights. Therefore, Plaintiff's federal claims against Defendants Jennifer Rosner, Richard Rosner, and Ankur Saraiya are dismissed.

**10. Claims related to the Zoning of the 11th St. Bar under 42 U.S.C. § 1983**
Plaintiff additionally seeks to assert claims of constitutional violations related to the zoning and policing of the 11th St. Bar. These claims include: failure to protect Plaintiff from harassment by other individuals, failure to protect her from the illegal 11th St. Bar, improper issuance of permits to the bar, failure to investigate violations of law by the bar, and deprivation of her property rights. She brings these claims against various city officials from departments including the Department of Buildings ("DOB"), Department of Investigations ("DOI"), Department of Environmental Protection ("DOEP"), New York City Council, and Plaintiff's local community board. She also brings such claims against state officials from the New York State Liquor Authority ("NYSLA"). Plaintiff also brings claims against Mayor Michael Bloomberg, Governor Andrew Cuomo, and New York Police Commissioner Raymond Kelly, among others. [9]

 **\*10** These claims fail to state a claim to relief because Plaintiff does not have constitutionally protected rights to be free of the various harms Plaintiff alleges.

There is no judicially cognizable right to the prosecution of another individual, nor is there a constitutional right to government assistance from the various city officials and organizations Plaintiff names in this lawsuit. *Leeke v. Timmerman,* 454 U.S. 83, 85–85, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981) (private citizen has no right to the prosecution or nonprosecution of another individual); *Laupot v. City of New York,* 2002 WL 83673, at *2 (S.D.N.Y. Jan.18, 2002) (dismissing plaintiff's claim against City of New York and NYPD for failure to prosecute individual pursuant to

noise complaints and allegations of harassment; plaintiff failed to allege a deprivation of any constitutionally protected right); *Stone v. Department of Investigation of City of New York,* 1992 WL 25202, at *2 (S.D.N.Y. Feb.4, 1992)* ("there is no constitutional right to an investigation by government officials").

Further, to state a substantive due process claim for deprivation of a property right, a plaintiff must establish a valid property interest in the action or benefit sought. Then, a plaintiff must show that defendants infringed on that right in an arbitrary or irrational manner. *Rosendale v. Iuliano,* 2002 WL 215656, at *5 (S.D.N.Y. Feb.13, 2002).* "A plaintiff does not ordinarily have an entitlement to the benefit sought if the local regulator has discretion with regard to the benefit at issue." *Id.* Under New York law, decisions regarding the enforcement of zoning and building codes "rest in the discretion of the public officials charged with enforcement." *Id.* Where, as here, a governmental entity retains discretion over zoning decisions, an individual cannot allege a due process violation, even if the governmental entity makes the wrong decision. *Id.* "Federal Courts should not become zoning boards of appeal." *Harlen Associates v. Incorporated Village of Mineola,* 273 F.3d 494, 505 (2d Cir.2001).

Moreover, Plaintiff cannot seek redress from the administrative action of the Department of Buildings and other city departments in federal court. In Article 78 of the Civil Practice Law and Rules, New York law establishes a procedure by which an individual can seek review of an administrative action. However, such proceedings must be brought in the supreme court of the relevant county. Federal courts lack jurisdiction to hear such claims. *Blach ex rel Clay v. Hernandez,* 360 F.Supp.2d 595, 638 (S.D.N.Y.2005).* Therefore, to the extent Plaintiff's claims are properly construed as an attempt to challenge decisions of administrative actions by state or city governmental entities, those claims must be dismissed.

Finally, to the extent Plaintiff attempts to allege that the actions of defendants deprived her of her property rights without due process, such a claim fails. First, Plaintiff has not adequately alleged the type of injury associated with constitutional violations. Further, where state courts provide a remedy for the alleged deprivation of a property interest and the alleged violation is not based on a state or city-wide policy, the due process claim necessarily fails in

federal court. *See Hellenic American Neighborhood Action Commit tee v. City of New York,* 101 F.3d 877, 880–81 (2d Cir.1996).

**11. Claims against Remaining City Defendants under 42 U.S.C. § 1983**

*11 Because the causes of action related to the bar/zoning grievances were the only claims plead against these defendants, for the reasons stated above Plaintiff's claims against Defendants Department of Investigations Inspector General Michael Carrol, DOI Investigator Dennis Curran, DOI Commissioner Rose Gill Hearn, DOI Assistant Inspector General Michael Healy, DEOP Commissioner Caswell Holloway, DOI Investigator Kristen Krause, DOB Commissioner Robert Limandri, DOB Assistant Chief Direction of Investigations James McElligott, City Councilwoman Rosie Mendez, ADA and Community Board 3 Member Alexandra Militano, DOB Assistant Commissioner Christopher Santulli, DOB Executive Engineer Mahner Shah and Community Board 3 Director Susan Stetzer are dismissed. *See, infra,* pp. 23–26.

Plaintiff's claims against Defendants Detective Hernandez, New York City Police Commissioner Kelly, Officer Kempf, and Mayor Michael Bloomberg are dismissed for failure to sufficiently allege personal involvement, which is a prerequisite to an award of damages under § 1983. *See Ashcroft v. Iqbal,* ––– U.S. ––––, ––– – ––––, 129 S.Ct. 1937, 1948–49, 173 L.Ed.2d 868 (holding that absent vicarious liability, each government official is only responsible for his or her own misconduct). Plaintiff has failed to allege any facts alleging any personal involvement these defendants had in Plaintiff's alleged violations.

Additionally, Plaintiff's complaint alleges claims against various police defendants who played only a minor role in her various constitutional violations, namely Sergeant Brown (warned Plaintiff that if officers returned to her apartment she would be taken to Bellevue) (Am.Compl.¶ 111), Sergeant Miranda (failed to adequately respond to noise complaints and stated Plaintiff was emotionally disturbed) (Am.Compl.¶ 103), Officer Schack (was present when another officer allegedly threatened Plaintiff and transported Plaintiff to Court for arraignment) (Am.Compl.¶ 147), and Deputy Inspector Dennis Dequatro (allegedly allowed harassment at Ninth Precinct to continue and ignored Plaintiff's complaints)

(Am.Compl.¶¶ 109, 337). [10] Taking Plaintiff's allegations as true, the allegations against these Plaintiff could not rise to the level of a deprivation of constitutional rights under § 1983. Therefore, these defendants are also dismissed for failure to state a plausible cause of action.

### 12. Claims against State Defendants

Plaintiff alleges claims against seven individual New York state defendants: New York State Liquor Authority (N.Y.SLA) Chairman Commissioner Dennis Rosen, NYSLA Commissioner Jeanique Greene, NYSLA Commissioner Noreen Healey, NYSLA Investigator Marvin Levine, NYSLA Investigator John Watts, former New York City Criminal Court Judge James Gibbons, and Governor Andrew Cuomo. [11]

Defendants Rosen, Healey, Greene, and Cuomo are named in the amended complaint only for their failure to act against the 11th St Bar. Plaintiff alleges that because these individuals hold senior positions of authority in the state government, they should be held liable for their failures to rectify the illegal bar operated next to Plaintiff's apartment. For the reasons stated above, these public officials cannot be held liable under § 1983 absent allegations of personal wrongdoing. As Plaintiff has not alleged any personal involvement against these defendants, her claims against them are dismissed.

 **\*12** Defendant Levine allegedly "culpably conferred with representatives of the 9th Precinct NYPD Jurisdiction and determined not to launch an investigation into the illegal bar next to Plaintiff's apartment." (Am.Compl.¶ 140.) As stated above, Plaintiff has failed to allege a federally cognizable cause of action regarding the allegedly illegal failure to shut down the bar. Therefore, Levine cannot be held liable for this conduct, and the claims against him are dismissed. *See, infra,* pp. 23–26.

In addition to general allegations similar to those plead against Levine, Plaintiff also alleges that Watts "turned into a deponent" and testified falsely in the subsequent criminal case against the Plaintiff. Watts also allegedly failed to testify truthfully as to the illegal nature of the bar; Plaintiff alleges the false testimony was "with willful intent to deprive plaintiff of her rights." (Am.Compl.¶ 189.) Interpreting Plaintiff's claims liberally, Plaintiff's complaint could be read to allege that Watts was therefore

also responsible for the malicious prosecution against her. As a public official testifying as a non-party witness in a judicial proceeding, however, Watts enjoys absolute immunity from a suit from damages arising from his allegedly false testimony. *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993).

Finally, Plaintiff alleges numerous instances of misconduct by Judge Gibbons, who presided over her criminal proceeding. Plaintiff alleges that he acted "unconstitutionally and outside of his jurisdiction ... by willfully, wantonly, intentionally and cruelly delaying the malicious prosecution by ordering a ... competency hearing." (Am.Compl.¶ 483.) A judge is entitled to judicial immunity from a suit for damages "if at the time he took the challenged action he had jurisdiction over the subject matter before him." *Huminksi v. Corsones,* 396 F.3d 53, 74–75 (2d Cir.2005). Merely acting "in excess" of his or her jurisdiction is insufficient; judicial immunity will only be removed if the judge acted "in the absence of all jurisdiction." *Id.* Allegations of bad faith or malice are insufficient to overcome judicial immunity. *Id.*

Here, Plaintiff's exhaustive allegations do not assert that any of Judge Gibbons' alleged misconduct occurred outside of his judicial function. Accepting Plaintiff's allegations as true, including that Gibbons made mistakes in applying the law, acted with malice and bias against her, conducted a wrongful and onesided competency hearing, and ultimately imposed a wrongful "diagnosis" and sentence, Plaintiff has failed to make any allegation that he acted in absence of his judicial function. Therefore, all claims against Judge Gibbons are dismissed.

### 13. Municipal Liability Against New York City and New York State under 42 U.S.C. § 1983

Plaintiff also seeks to plead claims for municipal liability against the City of New York and New York state for the various constitutional violations she alleges were perpetrated by city and state officials.

 **\*13** As an initial matter, the State of New York is immune from these claims under the Eleventh Amendment to the United States Constitution. *Barrington v. New York,* 2011 WL 3792395, at \*5 (S.D.N.Y. Aug.26, 2011) (citing *In re Charter Oak Assocs.,* 361 F.3d 760, 765 (2d Cir.2004). Therefore, all claims against New York State are dismissed.

As to Plaintiff's claim against the City of New York, to establish such a claim, a Plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional violation." *Bohmer v. New York,* 2011 WL 2651872, at *3 (S.D.N.Y. Jun.16, 2011). Courts in this circuit have repeatedly held that "boilerplate assertions that a municipality has a custom or policy resulting in a constitutional deprivation of the plaintiff's rights are insufficient." *Id.* As discussed above, Plaintiff makes numerous vague allegations of a broad conspiracy to benefit the 11th St. Bar and retaliate against her. She further alleges that the city was negligent in hiring and supervising the offending employees. (*See* Am. Compl. ¶¶ 525–530.) However, none of these allegations comes close to sufficiently alleging that that the City had a policy to hire, retain, and train police officers to engage in harassment, malicious arrests, unlawful searches, or any of the other myriad violations Plaintiff alleges. Therefore, Plaintiff's claim of municipal liability against New York City fail.

**14. Claims against Private Defendants under 42 U.S.C. § 1983**

*11th St. Bar Defendants*
Plaintiff alleges that Defendants RIP Construction, Hinkley, and Salvesen participated in the construction and permitting of the illegal bar next to her apartment. (Am.Compl.¶¶ 81–84.) For the reasons stated above, Plaintiff has failed to plausibly allege any constitutional violation or federal claim related to the allegedly illegal construction, zoning, and permitting of the bar. Therefore, Plaintiff's claims against RIP, Hinkley and Salvesen are dismissed.

Plaintiff pleads similar claims against Defendants 510 East 11th Street LLC, 510 East Corporation, John Griffin, Martin Sheridan, Roger Herr, Gerard Walker, Robert Perl, Tower Brokerage Inc., New York Realty Management, Ear Inn, Inc., Steven Grace, Jim Cross Engineering, and Marc Berger. These Defendants are associated (as owners, investors, etc.) with the bar that is the subject of Plaintiff's suit.

As a preliminary matter, to state a claim under § 1983 against a private actor, a plaintiff must allege that the individual acted under color of state law, by acting together with or obtaining significant aid from a state official to commit the constitutional violation. *Zemsky v. City of New York,* 821 F.2d 148, 151 (2d Cir.1987). Here, the only possible bases for a constitutional violation from the various incidents alleged by Plaintiff are those involving her arrest, prosecution or imprisonment. As stated above, the Plaintiff has not alleged constitutional violations related to the zoning, operation, or permitting of the bar. Because Plaintiff only alleged allegations of personal involvement in her criminal prosecutions by defendants Griffin and Herr, Plaintiff's federal claims against 510 East 11th Street LLC, 510 East Corporation, Martin Sheridan, Gerard Walker, Robert Perl, Tower Brokerage Inc., New York Realty Management, Ear Inn, Inc., and Marc Berger are dismissed.

**\*14** Plaintiff alleges that Defendant Griffin was named as a complainant in one of the criminal prosecutions of Plaintiff and that he made false reports to police and/or 911 resulting in her continued harassment. Plaintiff also alleges that Defendant Herr made 911 calls about the Plaintiff that led to her arrest and harassment.

Under § 1983, a private actor can be found to act under color of state law if: (1) the state compelled the private party's conduct, (2) the private party acted jointly with the state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state," or if the private party conspires with state actors to deprive someone of his or her constitutional rights. *Baez v. Jet Blue Airways,* 745 F.Supp.2d 214, 221 (E.D.N.Y.2010). To make such a finding, there must be a close nexus between the private actor and state actor. Moreover, providing false information to a law enforcement official does not make a private individual liable under § 1983. *Id.* Rather, "a longstanding pattern of repeated lies and false accusations made for the purpose of procuring an arrest may constitute state action." Here, while Plaintiff makes vague allegations of a conspiracy between the bar owners and police, she does not allege facts to establish the "close nexus" required to plead § 1983 claims against Herr and Griffin. Her allegations that Herr made "false statements as a deponent and false 911 calls," that Griffin laughed with another defendant about Plaintiff's arrest, and that Griffin acted as a complaining witness in her prosecution in cooperation with ADA Reynolds do not suffice to establish that Defendants' action could fairly be treated as that of the state itself. (Am.Compl.¶¶ 168, 191, 304.) *See Chodkowski v. City of New York,* 2007 WL 2717872, at *8–*9 (S.D.N.Y. Sept.11, 2007).

*Defense Attorney Brostowin*

Plaintiff's complaint includes numerous allegations of collusion and violations of her civil rights by Defendant Brostowin, her defense attorney. Plaintiff suggests that Browstowin's poor defense of her was the result of his collusion with ADA Reynolds. (*See,* e.g., Am. Compl. ¶ 302, 331.) Courts have noted that where the allegedly conspiring parties have an "adversarial relationship," allegations of a conspiracy are especially implausible. Plaintiff here offers no facts to support the inference that Defendant Browstowin conspired with prosecutors or police. *See Flores v. Levy,* 2008 WL 4394681, at *10 (E.D.N.Y. Sept.23, 2008) (citing numerous cases where allegations of conspiracy between defense attorney and prosecutor found to be implausible). Most of Plaintiff's allegations of "conspiracy" seem more plausibly read as a list of Plaintiff's grievances for her attorney's allegedly poor representation. Accordingly, Plaintiff's allegations are implausible and insufficient to allege a constitutional injury; legal malpractice does not constitute a constitutional violation. Therefore, Plaintiff's claims against Browstowin are dismissed sua sponte. [12]

### 15. State Law Claims

 *15 In addition to her many federal claims, Plaintiff also pleads numerous claims under either common law or New York State law. Here, all of Plaintiff's federal claims surviving the motions to dismiss relate to her claims of false arrest, false imprisonment, malicious prosecution, and misuse of process. Given that many of Plaintiff's causes of action are dismissed, this Court must consider whether to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

This Court has attempted to discern which of Plaintiff's state law claims correspond to her surviving federal claims. And, the Court has attempted to parse through this rambling, disorganized, and extraordinarily lengthy complaint to plead the strongest possible arguments. However, Plaintiff's state law claims are particularly confusing in that they are exceedingly vague as to which events form a basis for which cause of action. (See, e.g., Plaintiff's Twenty–Ninth cause of action, Am. Compl. ¶¶ 518–23.) Accordingly, these claims lack specific factual allegations upon which this Court could determine whether supplemental jurisdiction should be exercised. Without a basis to determine that a "common nucleus of fact" exists, this Court cannot find any of Plaintiff's claims

to properly fall under our supplemental jurisdiction. Therefore, all of Plaintiff's state law claims are dismissed without prejudice.

### 16. Failure to Serve

Plaintiff has also failed to serve Defendant Hamilton Meadows; no proof of service has been filed on the docket as of the entry of this order. As Plaintiff has not requested more time to properly effect service, her deadline to serve defendants expired on July 21, 2010 (120 days after her filing of the latest amended complaint) to effect service. Plaintiff's claims against Defendant Meadows will be dismissed sua sponte under Federal Rule of Civil Procedure 4(m) if she fails to file proof of service with the Court within thirty days of the entry of this order. *See Sims v. New York City Dept. of Parks and Recreation,* 2010 WL 46370, at *2 (S.D.N.Y. Jan.6, 2010).

### 17. Summary

To summarize, Plaintiff has adequately pled the following claims for false arrest and/or imprisonment: March 8, 2006 against Corcoran, Berol and Svenstrup, March 15, 2006 against Corcoran and Svenstrup, and September 15, 2006 against Corcoran, Svenstrup and Mahoney. Plaintiff has pled a malicious prosecution claim for Corcoran's conduct related to her September 18, 2007 arrest and subsequent prosecution. Plaintiff has also adequately pled an excessive force claim against Svenstrup related to the injury allegedly sustained by Plaintiff on September 15, 2006. Plaintiff has pled a claim for an illegal strip search on September 18, 2007 against a yet unnamed female officer. Finally, Plaintiff has pled a claim for an illegal search against Corcoran related to the September 18, 2007 search of her apartment.

The Court dismisses all claims against all remaining defendants except Defendant Samolsky, who the Court understands was properly served, has not answered, and did not move to dismiss, and Defendant Meadows, whom Plaintiff has thirty days to serve.

### CONCLUSION

 *16 For the reasons set forth above, Defendants' motions to dismiss are GRANTED in part and DENIED in part. **Plaintiff is directed to contact Magistrate Judge Peck's chambers to schedule a status conference within 30 days of**

2011 WL 4344203

the entry of this order. Failure to do so will result in the dismissal of this action.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4344203

Footnotes

1    By letter to the Court dated August 21, 2011, Plaintiff makes her second request for additional time to respond to the present motions. However, Plaintiff's time to respond expired approximately eight months ago, after she was granted her first extension and explicitly warned that failure to respond would result in the Court deciding the motions unopposed. While Plaintiff offers numerous excuses for her failure to respond, none are sufficient for this Court to reconsider its prior order. Plaintiff's pro se status does not excuse her from following the Court's deadlines.

2    Plaintiff's numerous causes of action for constitutional violations are made under federal law, mostly under 42 U.S.C. § 1983. However, her twenty-ninth cause of action also states a general claim for "equal protection of laws, discrimination in civil rights prohibited motivated by animus, security against unreasonable searches, seizures and interceptions" under the New York State Constitution. Because Plaintiff has not plead specific violations of the New York State Constitution beyond this "catch all" cause of action, the Court will interpret her claims under the federal constitution and deal with all state law claims separately.

3    Plaintiff's claims regarding her arrests and involuntary commitments on March 8 and March 15, 2006 are the only claims this Court relied on the original complaint to decide, as these claims are not plead in the amended complaint.

4    Defendant Samolsky was served on June 1, 2010; however, he did not answer her complaint and has not appeared in this action.

5    The Court notes that the officer who Plaintiff alleges conducted the strip search is still unnamed. The Court makes no finding as to whether this claim is now time-barred.

6    The Court has considered Defendants' argument that because Plaintiff's prosecution did not have a favorable outcome, she cannot sustain a claim for malicious prosecution. However, at this early stage, it is unclear how each of Plaintiff's criminal proceedings was resolved; she contends at least some charges were dismissed. (*See* Am. Compl. ¶ 204.) Therefore, the Court cannot find that dismissal of these claims is appropriate at this time.

7    Similarly, to the extent Plaintiff intended to plead a claim for false arrest against Defendant Reynolds, this claim fails due to Defendant Reynolds' absolute prosecutorial immunity.

8    Further, Plaintiff fails to allege any personal involvement in her prosecution by District Attorney Morgenthau, further meriting dismissal of her claims against him. *See Haygood v. City of New York,* 64 F.Supp.2d 275, 279–80 (S.D.N.Y.1999).

9    The Court construes Plaintiff's claims against the various state officials as claims against them in their individual capacity, recognizing that they are immune from suit in their official capacity. *See Evans v. N.Y. State Dept. of Health,* 189 F.3d 460, 460 (2d Cir.1999) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983.") (citation omitted).

10    *See Younger v. City of New York,* 480 F.Supp.2d 723, 731 (S.D.N.Y.2007) ("a Defendant who occupies a supervisory position may be "personally involved" in a deprivation of constitutional rights in several ways, including: (1) directly participated in the infraction; (2) after learning of the violation, failing to remedy the wrong; ... (4) being grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) demonstrating "gross negligence" or "deliberate indifference" to the constitutional rights of an individual by having actual or constructive notice of unconstitutional practices and failing to act .") Plaintiff has failed to allege any specific facts to sustain a claim against DeQuatro under any of these theories of liability. Her general accusation that he failed to act is not sufficient to survive a motion to dismiss. Further, to the extent Plaintiff alleges that DeQuatro allowed the "illegal" bar to continue operating, for the reasons discussed above, this does provide a basis for a Section 1983 claim. *See, infra,* pp. 23–26.

11    As stated previously in footnote 9, Plaintiff's claims against state officials can only be maintained as claims against these officials in their individual capacity. State officials acting in their official capacity are immune from suit under § 1983. *See Evans,* 189 F.3d at 460.

12    The Court notes that while Plaintiff has filed proof of service of Defendant Brownstowin, he has not answered the complaint or appeared in this action to date. Nevertheless, because Plaintiff has not adequately stated claims against Defendant Brownstowin, the Court dismisses such claims sua sponte.

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1534416
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Gerald T. GERRARD, Plaintiff,

v.

John BURNS; Jefferson County Sheriff Department;
and Jefferson County, New York, Defendants.

No. 7:14–CV–1235.
|
Signed April 6, 2015.

**Attorneys and Law Firms**

Gerald T. Gerrard, Black River, NY, pro se.

Jefferson County Attorney, Jefferson County Office
Building, David J. Paulsen, Esq., of Counsel, Watertown,
NY, for Defendants.

***MEMORANDUM–DECISION and ORDER***

DAVID N. HURD, District Judge.

**I. *INTRODUCTION***
**\*1** Plaintiff Gerald T. Gerrard ("plaintiff" or "Gerrard")
brings a complaint against defendants John Burns
("Sheriff Burns"), Jefferson County Sheriff Department
("the Sheriff's Department"), and Jefferson County,
New York asserting claims for defamation, respondeat
superior, and breach of the right to privacy under New
York Civil Rights Law section 50–a. Plaintiff seeks $25
million in compensatory damages.

Defendants move to dismiss the complaint for lack of
subject matter jurisdiction under Federal Rule of Civil
Procedure ("Rule ___") 12(b)(1). [1] No opposition was
filed by plaintiff despite requesting and being granted an
extension of time in which to respond.

The motion was taken on its submissions and without oral
argument.

**II. *BACKGROUND***

The following facts, taken from the complaint, are
assumed true for purposes of the motions to dismiss. *See
Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d
Cir.2002).

Gerrard was employed by the Sheriff's Department from
1977 through 1992. Throughout his tenure, he was never
subject to any disciplinary action. In February 1991,
derogatory comments were made regarding plaintiff's
sexuality. [2] When he demanded that a written apology be
placed in his personnel file, the offending party refused to
comply, but verbally stated he or she was sorry. Following
this incident, Gerrard became the subject of ridicule and
the target of the Sheriff's Department and its employees.

In September 1991, plaintiff injured his knee while
working. He underwent surgery and took over a year off
from work. The Sheriff's Department's policy at the time
guaranteed an employment position for injured workers
for up to one year after the date of an injury. Based on the
policy, Gerrard was not allowed to return to work after
he was cleared by his physicians. Despite the policy, other
injured workers in the preceding and following years who
were forced to miss over a year of work were allowed to
return to employment at the Sheriff's Department.

In the twenty-one years following his departure from the
Sheriff's Department, plaintiff repeatedly tried to return
to a position in the law enforcement field. When Gerrard
applied for a position as a driver for a tree-cutting service,
an Under Sheriff at the Sheriff's Department advised the
potential employer that plaintiff "was skizoid, had [his]
gun taken away, could deal with the public, and refused
to return to work." [3] Compl. ¶ 20. Despite his efforts,
Gerrard was unable to find work and suffered severe
financial loss. He eventually began looking for lower
paying positions outside of the field of law enforcement
and returned to school to pursue a paralegal degree. He
continued having problems finding employment.

In October 2013, plaintiff considered applying for a
security job at a National Aeronautics and Space
Administration site. He suspected that someone at the
Sheriff's Department was sabotaging his efforts to obtain
employment, so he hired an individual to investigate how
he was being portrayed by the defendants to potential
employers. As a result of this investigation, Gerrard
learned he was being portrayed as a mentally disturbed
individual who was not a suitable employee.

## III. *DISCUSSION*

**\*2** As noted, Gerrard has not filed any opposition to defendants' motion. Pursuant to Local Rule 7.1(b)(3), "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement ... the non-moving party's failure to file or serve any papers ... shall be deemed as consent to the granting ... of the motion ... unless good cause be shown." Here, defendants' motion to dismiss is properly filed, plaintiff has failed to oppose it (despite being granted an extension of time to do so), and plaintiff has failed to show good cause. Therefore, it must be determined whether defendants have met their "burden to demonstrate entitlement" to dismissal. An inquiry into whether a movant has met its "burden to demonstrate entitlement" to dismissal under Local Rule 7.1(b)(3) is a more limited endeavor than a review of a contested motion to dismiss. *See e.g., Herring v. Tabor,* No. 9:12–CV–1739, 2014 WL 2946545, at \*5 (N.D.N.Y. June 30, 2014) (noting that where a defendant's motion to dismiss is unopposed, the "burden of persuasion is lightened such that, in order to succeed, the motion need only be 'facially meritorious.' ").

### A. *Rule 12(b)(1)*

A district court properly dismisses a case for lack of subject matter jurisdiction where it "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). Subject matter jurisdiction may be based on either a federal question or the complete diversity of citizenship of the parties. 28 U.S.C. §§ 1331, 1332; *Perpetual Sec., Inc. v. Tang,* 290 F.3d 132, 136 (2d Cir.2002). Federal question jurisdiction exists where the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Greenberg v. Bear, Stearns & Co.,* 220 F.3d 22, 25 (2d Cir.2000) (internal quotations omitted). The plaintiff bears the burden to prove the existence of subject matter jurisdiction by a preponderance of the evidence. *Makarova,* 201 F.3d at 113.

### B. *Rule 12(b)(6)* [4]

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 8(a)(2), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

Dismissal is appropriate only where a plaintiff has failed to provide some basis for the allegations that support the elements of his claims. *See Twombly,* 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face"). When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are to be deemed true, and all reasonable inferences must be drawn in the plaintiff's favor. *Chambers,* 282 F.3d at 152.

### C. *Pro Se Plaintiff*

**\*3** Submissions by pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers," *Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir.1993) (internal quotations omitted), and their pleadings are to be liberally construed "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999). The obligation to be lenient while reading a pro se plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. N.Y.S. Dep't of Labor,* 709 F.Supp.2d 218, 224 (S.D .N.Y.2010) (citing *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). Nonetheless, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (internal quotations omitted)); *see also Zapolski v. Fed. Republic of Germany,* 425 F. App'x 5, 6 (2d Cir.2011) (summary order) (pro se plaintiffs must plead sufficient facts to establish a plausible claim to relief and establish subject matter jurisdiction).

### D. *Application*

In his complaint, Gerrard does not invoke § 1331 or § 1332. [5] Nor does he identify any specific federal substantive law that defendants allegedly violated or that provides an independent cause of action. He instead asserts these claims: defamation against Sheriff Burns (Count I); respondeat superior against Jefferson County

and the Sheriff's Department (Count II); respondeat superior against Jefferson County (Count III); and breach of the right to privacy under New York Civil Rights Law section 50–a against Sheriff Burns, Jefferson County, and the Sheriff's Department (Count IV).

### 1. *Defamation* (Count I)

"Generally, defamation is an issue of state, not of federal constitutional, law." *Vega v. Lantz,* 596 F.3d 77, 81 (2d Cir.2010). Under limited circumstances, a constitutional violation may be found when the defamation is committed by a government official. *Id.* A defamation claim can be brought as a civil rights violation pursuant to 42 U.S.C. § 1983 when a plaintiff can demonstrate "a stigmatizing statement plus a deprivation of a tangible interest."[6] *Id.* (quoting *Algarin v. Town of Wallkill,* 421 F.3d 137, 138 (2d Cir.2005)). To establish a "stigma plus" claim, a plaintiff must show: (1) "the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false," and (2) "a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica,* 383 F.3d 34, 38 (2d Cir.2004) (internal quotations omitted). The "state-imposed burden" or "alteration" of the plaintiff's status or rights must be in addition to the stigmatizing statement. *Id.* The Second Circuit has cautioned against conflating the "deleterious effects" of the defamation itself with the "additional state-imposed burden"-the "plus" "necessary for invoking the 'stigma plus' doctrine." *Id.* at 38–39.

**\*4** Here, although plaintiff plausibly alleges the "stigma" piece of his claim-that the Sheriff's Department and/or Burns' publication of false and defamatory statements to prospective employers prevented him from obtaining employment-he fails to allege the "plus." As plaintiff alleges he did not return to work due to an injury and the Sheriff's Department's policy regarding absences longer than a year, he cannot argue a plus stemming from the loss of government employment. *See Smith v. Town of Stony Point,* No. 13 CV 5000, 2014 WL 2217900, at \*4 (S.D.N.Y. May 22, 2014) (citing *Siegert v. Gilley,* 500 U.S. 226, 234 (1991) (finding no liberty interest was implicated when alleged government defamation occurred subsequent to plaintiff's voluntary resignation from government employment); *Sadallah,* 383 F.3d at 38–39 (damage to reputation and resulting economic harm were direct "deleterious effects" of alleged defamation,

and did not "satisfy the separate and independent 'plus' prong of the 'stigma plus' test")). Nor can plaintiff establish a "plus" based on his inability to continue to work in the field of law enforcement, as this is a direct consequence of the defamation itself. *See Smith,* 2014 WL 2217900, at \*4.

Accordingly, plaintiff cannot state a federal constitutional law claim based on the alleged defamatory statements. Defamation is generally a state law claim, and to the extent Gerrard's assertions could be liberally read to allege a stigma plus claim, he fails to allege the plus. Therefore, *Count I* cannot give rise to subject matter jurisdiction.

### 2. *Respondeat Superior* (Counts II and III)

Municipalities may be liable for common law torts committed by their employees under the doctrine of respondeat superior. *See e.g., L.B. v. Town of Chester,* 232 F.Supp.2d 227, 239 (S.D.N.Y.2002). *Count II* alleges respondeat superior liability on the part of the Sheriff's Department and Jefferson County for Sheriff Burns' alleged defamatory statements. As plaintiff's defamation claim is solely a state claim, *Count II* alleging liability for defamatory statements cannot confer subject matter jurisdiction.

Count III, although titled "Respondeat Superior," could be liberally construed to allege a negligent supervision or failure to train claim against Jefferson County. Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality may be liable for constitutional violations if caused by: (1) a municipal policy; (2) a municipal custom or practice; or (3) the decision of a municipal policymaker. *See Pearce v. Labella,* 971 F.Supp.2d 255, 267 (N.D.N.Y.2013) (citing *Monell,* 436 U.S. at 694).

Plaintiff's conclusory allegations that Jefferson County "is responsible for hiring, supervising, and training agencies such as Defendant Sheriff's Department," "Defendant County has a duty to ensure its agencies act competently and ethically," and "Defendant County breached its duty to competently supervise the direction of Defendant Sheriff's Department and its employees," Compl. p. 5., allege no facts. Further, there is no underlying constitutional violation alleged for which it could be established that a Jefferson County custom or policy caused said violation. *See Monell,* 436 U.S. at 694.

Accordingly, *Count III* cannot give rise to subject matter jurisdiction.

### 3. *Section 50–a* (Count IV)

**\*5** Plaintiff alleges his privacy was breached under New York Civil Rights Law section 50–a. Section 50–a provides:

> All personnel records used to evaluate performance toward continued employment or promotion, under the control of any police agency or department of the state or any political subdivision thereof ... shall be considered confidential and not subject to inspection or review without the express written consent of such police officer ... except as may be mandated by lawful court order.

N.Y. Civ. Rights Law § 50–a. Alone, this alleged violation of a state statute cannot sustain subject matter jurisdiction in federal court. Liberally construed, plaintiff could be alleging a procedural due process violation based on the state statute. To prevail on such a claim, Gerrard "must show he possessed a protected liberty or property interest in the privacy of his personnel file and was deprived of that interest without due process.[7] *Smith,* 2014 WL 2217900, at *2 (citing *McMenemy v. City of Rochester,* 241 F.3d 279, 285–86 (2d Cir.2001)). He cannot do so however, as "New York courts have repeatedly upheld disclosures of the contents of police personnel files ... in furtherance of the police departments' official functions." *Id.* Just as in *Smith,* defendants here are alleged to have disclosed information from plaintiff's personnel file in furtherance of their official functions (responding to employment inquiries). 2014 WL 2217900, at *2 (finding no procedural due process violation in substantially similar factual context). Section 50–a affords plaintiff no right to privacy in his personnel file under these circumstances, and therefore he cannot claim that defendants' disclosure of his personnel file deprived him of a property interest in violation of the Constitution.

Accordingly, *Count IV* does not allege a violation of federal substantive law that would confer subject matter jurisdiction upon the undersigned.

### E. *Amendment*

In its current form, the complaint fails to assert any basis for subject matter jurisdiction, and even construed liberally, it also fails to state a claim upon which relief could be granted. Under such circumstances, a pro se litigant such as plaintiff would normally be granted an opportunity to amend his complaint. *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002). However, such measures are not warranted here because, as explained above, any amendment would be futile. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (dismissal is appropriate where leave to amend would be futile). In light of the above discussion, it is clear that plaintiff's complaint cannot proceed as drafted and any amendment would be futile.

## IV. *CONCLUSION*

Gerrard asserts only state law claims over which subject matter jurisdiction is lacking. Even construing his allegations liberally, he cannot make out any federal claims. Because any amendment would be futile, leave to do so is not required. For these reasons, defendants' motion to dismiss plaintiff's complaint will be granted.

**\*6** Therefore, it is

ORDERED that

1. Defendants' motion to dismiss the complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is GRANTED;

2. Plaintiff's complaint is DISMISSED in its entirety; and

3. The Clerk is directed to serve a copy of this Memorandum–Decision and Order on the parties in accordance with the Local Rules, file a judgment accordingly, and close the file.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2015 WL 1534416

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works.

## Footnotes

1  Although the motion is made solely under Rule 12(b)(1) and defendants argue lack of subject matter jurisdiction, they also argue the allegations are insufficient to state claims for defamation, respondeat superior, and violation of New York Civil Rights Law section 50–a. Accordingly, it is fair to say the motion is also made under Rule 12(b)(6) for failure to state a claim.

2  Plaintiff also alleges that in 1989, an employee of the Sheriff's Department attempted to break into employee personnel records and subsequently resigned from her position. It is unclear how this relates to the derogatory comments made about plaintiff in 1991.

3  Asserting that plaintiff "could deal with the public" is possibly a typo; presumably the Under Sheriff advised that plaintiff "could *not* deal with the public."

4  Although they have not specifically moved under 12(b)(6), defendants do attack the sufficiency of plaintiff's allegations. Further, as explained in detail below, the claims asserted in the complaint are, on their face, state law claims. However, construed liberally, some allegations could be read as asserting constitutional violations, but those claims would fail for the reasons discussed below. Therefore, in the interest of thoroughness, the standard for failure to state a claim upon which relief may be granted is included here.

5  Subject matter jurisdiction cannot be based on § 1332 as all parties are undisputably residents of New York.

6  Although no where in the complaint has plaintiff pleaded a claim pursuant to § 1983, or a "stigma plus" claim, such a claim will be considered as plaintiff has asserted a defamation claim against Sheriff Burns, a government official. As Gerrard is proceeding pro se, his pleadings must be liberally construed to raise the strongest arguments that they suggest.

7  It is not entirely clear the connection between the alleged defamatory statements made to prospective employers and the contents of Gerrard's personnel file.

---

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Declined to Extend by Bailey v. ESPN, Inc., D.Conn., July 29, 2015

2014 WL 3887760
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David Shaun NEAL, Plaintiff,
v.
ASTA FUNDING, INC., and Gary Stern, Defendants.

No. 13 CV 2176(VB).
|
Signed June 17, 2014.

### MEMORANDUM DECISION

BRICCETTI, District Judge.

**\*1** Plaintiff David Shaun Neal, proceeding *pro se,* brings this diversity action alleging defamation.

Now before the Court is defendants' motion to dismiss the amended complaint for failure to state a claim or, in the alternative, to compel arbitration.

For the reasons set forth below, defendants' motion to dismiss is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1332.

### BACKGROUND

For purposes of deciding the pending motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor.

Plaintiff alleges little about himself-only that he is a resident of New York State.

Defendant ASTA Funding, Inc. ("ASTA") is a debt-collection agency. Defendant Gary Stern is ASTA's Chief Executive Officer.

In March 2013, plaintiff alleges, "an employee or agent of defendant ASTA" telephoned plaintiff's "former employee" and "business associate" Jacky Charpentier and stated, "Shaun stole some emails from ASTA, do you know anything about that?" Plaintiff does not allege who made this phone call or why.

Elsewhere, however, plaintiff alleges defendant Stern "directed the employee or agent of ASTA to engage in a series of phone calls similar to the one with Jacky Charpentier with other business associates and former employees of plaintiff." Plaintiff alleges Stern "used the resources, employees and services of defendant ASTA" to engage in a "pattern of defamation against plaintiff in retaliation for plaintiff's having filed a "whistleblowing action ... with the Department of Labor." In particular, plaintiff alleges, Stern made defamatory statements about him, orally and in emails, to ASTA's employees and to plaintiff's "business associates ." Plaintiff alleges he provided defendants with "documentary evidence" showing "the exact circumstances" under which he had come to possess their emails, yet "defendants intentionally and maliciously continued to transmit defamatory statements about plaintiff to third parties." "Upon information and belief," plaintiff alleges this pattern of defamation caused him to suffer the "loss of business opportunities."

Defendants now move to dismiss the amended complaint or, in the alternative, to compel arbitration, arguing plaintiff is bound by an arbitration agreement between defendants and New World Services, an information technology company in which plaintiff is a principal.

### DISCUSSION

#### I. *Legal Standard*

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" announced by the Supreme Court in *Ashcroft v. Iq bal,* 556 U.S. 662, 679 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. *Id.* at 678; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir.2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity

and determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. at 679.

**\*2** To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." *Ashcroft v. Iqbal,* 556 U.S. at 678; *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcort v. Iqbal,* 556 U.S. at 678. "The plausibility standard is not akin to a "probability requirement/ but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Because plaintiff is proceeding *pro se,* the Court must construe his submissions liberally and interpret them "to raise the strongest arguments they suggest." *Pabon v. Wright,* 459 F .3d 241, 248 (2d Cir.2006) (internal quotation marks omitted). "Even in a *pro se* case, however ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (internal quotation marks omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. *Id.*

## II. *Choice of Law*

Ordinarily, in a diversity case, the Court must apply the choice of law rules of the forum state to determine which state's substantive law should be applied. *Kl ax on Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487. 496 (1941). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *Cargo Partner AG v. Albatrans Inc.,* 207 F.Supp.2d 86, 93 (S.D.N.Y.2002), *aff'd,* 352 F.3d 41 (2d Cir.2003) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997)). Here, defendants have briefed plaintiff's defamation claim under the law of the forum state-New York-and plaintiff takes no position on the applicable law. Thus, the Court deems the parties to have consented to the application of New York law. *See id.* [1]

## III. *Defamation*

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. Generally, spoken defamatory words

are slander; written defamatory words are libel." *Albert v. Loksen,* 239 F.3d 256, 265 (2d Cir.2001) (citations and internal quotation marks omitted). Because plaintiff's defamation claim arises from both oral and written statements, the amended complaint sounds in both slander and libel.

To prevail on a claim for either libel or slander under New York law, plaintiff must show "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] *per se,* and (vii) not protected by privilege." *Id.* at 265–66 (citing *Dillon v. City of New York,* 26 A.D.2d 34, 37–38 (1st Dep't 1999)) (elements for slander); *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir.2000) (noting nearly identical elements for libel).

**\*3** "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities,* 518 U.S. 415, 427 (1996) (discussing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938)). Thus, plaintiff's defamation claims are "subject to the liberal pleading standards of *Fed.R.Civ.P. 8," Mobile Data Shred. Inc. v. United Bank of Switzerland,* 2000 WL 351516, at *6 (S.D.N.Y. Apr. 5, 2000), rather than the "particularized pleading requirements set forth in New York's *C.P.L.R.* section 3016." *Biro v. Conde Nast,* 883 F.Supp.2d 441, 456 (S.D.N.Y.2012). Even under the more lenient federal standard, however, the amended complaint must at least "identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published." *Mobile Data Shred, Inc. v. United Bank of Switzerland,* 2000 WL 351516, at *6. "Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." *Camp Summit of Summitville, Inc. v. Viniski,* 2007 WL 1152894. at *10 (S.D.N.Y. Apr. 16.2007).

Mere, the amended complaint identifies a defamatory statement ("Shaun stole some emails from ASTA, do you know anything about that?"), the approximate time the statement was made ("early March 2013"), and to whom it was made (Charpentier). But plaintiff's failure to identify the anonymous "employee or agent of ASTA" responsible for making the statement is fatal to his claim. *See In*

*Touch Concepts, Inc. v. Cello P'ship,* 949 F.Supp.2d 447, 484 (S.D.N.Y.2013) (dismissing defamation claim against corporate defendants when plaintiff failed to allege which defendant made defamatory statement); *Camp Summit of Summitville, Inc. v. Viniski,* 2007 WL 1152894, at *12 (dismissing defamation claim that failed to allege "who at [defendant organization] made the defamatory remarks"); *Rafferty v. Halprin,* 1991 WL 148798, at *8 (S.D.N.Y. July 26, 1991) (concluding *pro se* plaintiff's "claim for defamation against all defendants, lumped together," was "pleaded in so vague and conclusory a fashion as to fail to satisfy even the lenient notice pleading requirements of Rule 8(a)").

Nor can plaintiff state a claim against Stern by alleging that on at least some occasions, the anonymous caller was acting at Stern's direction, because it is unclear what Stern directed the caller to say and to whom. *See Mobile Data Shred, Inc. v. United Bank of Switzerland,* WL 351516, at *6 (dismissing complaint that failed to identify third party to whom defamatory statement was allegedly published). Thus, in the absence of more detailed pleading. Stern's role in any alleged defamation "is on its face mere speculation." *Church of Scientology Int'l v. Eli Lilly & Co,* 778 F.Supp. 661, 668 (S.D.N.Y.1991); *see also Nickerson v. Commc'n Workers of Am. Local 11171,* 2005 WL 1331122, at *7 (S.D.N.Y. May 31, 2005) (dismissing claim for defamation against unspecified "defendants" alleged to have made "unfounded and unsubstantiated" statements about plaintiff's job performance "to retaliate against and defame [her] personally"). [2]

*4 Because plaintiff's threadbare allegations fail even to satisfy the liberal "plausibility" pleading standard, plaintiff has "not nudged [his defamation] claim[ ] across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly,* 550 U.S. at 547. Accordingly, plaintiff's defamation claim is dismissed.

IV. *Leave to Amend*
As plaintiff is proceeding *pro se,* the Court would ordinarily grant him leave to amend his complaint. *See Coco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (district court generally should not dismiss pro se complaint without granting at least one opportunity to replead factually insufficient claims). Here, however, because plaintiff has already amended his complaint once, [3] the Court declines to grant plaintiff leave *sua sponte* to file a second amended complaint.

**CONCLUSION**

Defendants' motion to dismiss the amended complaint is GRANTED.

The Clerk is instructed to terminate the pending motion (Doc. # 40) and close this case.

SO ORDERED:

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3887760

Footnotes

1    Having independently reviewed the case law, the Court is satisfied this dispute would be governed by New York law even in the absence of the parties' consent.

2    Although "[a] corporation may be held liable for defamatory utterances made by its officer or agent, acting within the scope of his authority." *Unker v. Joseph Markovits, Inc.,* 643 F.Supp. 1043, 1049 (S.D.N.Y.1986), plaintiff's failure to allege defamation as to any of ASTA's principals or agents forecloses vicarious liability as against ASTA. To the extent direct liability may be alleged against a corporation under New York law, which is doubtful, *see, e.g., Karaduman v. Newsday, Inc.,* 51 N.Y.2d 531, 546–47 (1980), the threadbare allegation of the amended complaint provide the Court no occasion to consider the issue here. Accordingly, plaintiff has failed to state a claim against ASTA.

3    The amended complaint was filed in response to an Order to Amend issue *sua sponte* by Chief Judge Preska on May 20, 2013. In that Order, Chief Judge Preska carefully identified the deficiencies in plaintiff's original pleading and explained, in plain English, how to correct them. (*See* Doc. # 3).

2011 WL 779784
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Kenneth ZAHL, M.D., individually
and on behalf of his child, Plaintiff,
v.
Karen KOSOVSKY, M.D., et al., Defendants.

No. 08 Civ. 8308 LTS THK.
|
March 3, 2011.

## MEMORANDUM OPINION AND ORDER

SWAIN, J.

**\*1** Plaintiff Kenneth Zahl, M.D.,[1] ("Plaintiff" or "Zahl") brings this action *pro se* against Karen Kosovsky, M.D. ("Kosovsky"), Harry Kosovsky, M.D., and Gertrude Kosovsky (with Kosovsky, the "Kosovsky Defendants"). Kevin McKeown ("McKeown"). Robert Dobrish, Esq. and Dobrish, Zeif, Gross, Wrubel, LLP (the "Dobrish Defendants"), Jo Ann Douglas, Esq. ("Douglas"), SoftSplit LLC and Soft Split Kids LLC (the "Soft Split Defendants"), New York State Supreme Court Justice Marilyn G. Diamond,[2] individually, New York State Supreme Court Justice Joan B. Lobis, in her individual and official capacities, New York State Supreme Court Justice Laura Visitacion–Lewis, in her official capacity. Justice Jonathan Lippman,[3] in his individual and official capacities, and Justice Jacqueline Silbermann, in her individual and official capacities (the "Judicial Defendants"), the New York State Unified Court System and its Office of Court Administration ("NYS UCS" and "OCA," respectively, and together with the Judicial Defendants, the "State Defendants"), and John and Jane Does 1 through 100, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 and asserting causes of action pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986, the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(b), (c) and (d), Title III of the Omnibus Crime Control and Safe Streets Act of 1968, ("Wiretap Act"), 18 U.S.C. § 2511(1) (a), 18 U.S.C. § 1708, 42 U.S.C. § 408(a)(7), 18 U.S.C. §§ 1503 and 1512, New York Penal Law Articles 155 and

175, Section 487 of the New York Judiciary Law, and common law civil conspiracy. In a series of motions, all defendants except the Soft Split and Doe defendants[4] (the "Moving Defendants") move to dismiss the complaint pursuant to Rules 8(a) and 12(b) of the Federal Rules of Civil Procedure, as inadequately plead, for lack of subject matter jurisdiction and for failure to state claims upon which relief may be granted. Plaintiff asserts that the Court has original jurisdiction of his federal claims and supplemental jurisdiction of his state law claims. The Court has considered thoroughly the parties' submissions and, for the following reasons, the Moving Defendants' motions will be granted in their entirety and the case will be dismissed in its entirety.

## BACKGROUND

The Complaint includes the following factual allegations.[5] Plaintiff and Defendant Karen Kosovsky were married on September 9, 1990. (Compl.¶ 36.) Plaintiff and Kosovsky's daughter, A.Z., was born on June 4, 1991. (*Id.* ¶ 22.) Plaintiff and Kosovsky separated on A.Z.'s second birthday, and later that year Kosovsky filed for divorce in New York County Supreme Court. (*Id.* ¶¶ 40–41.) Defendant Robert Dobrish, who is the managing partner of Defendant Dobrish, Zeif, Gross, Wrubel, LLP, has represented Kosovsky in the state matrimonial action at all relevant times. (*Id.* ¶¶ 24–25.) A thirteen-day trial was held in 1993 on the issue of custody of A.Z., before Justice David Saxe (*Id.* ¶ 199), culminating in a decision issued in February 1996 awarding sole custody to Kosovsky with "liberal" visitation to Zahl. (*Id.* ¶ 202.) The divorce aspect of the action, including the issues of child support and distribution of assets, was bifurcated and left for a later date. (*Id.*) Justice Saxe was elevated to the Appellate Division shortly after issuing the custody decision. *Id.* ¶¶ 202, 222.)

**\*2** The case was reassigned to several different judges over the next year, and Justice Saxe's custody decision was modified several times. (*Id.* ¶¶ 220–23, 233, 238.) Shortly after Justice Saxe's departure, defendant Jo Ann Douglas was appointed as a law guardian to represent A.Z. *Id.* ¶ 223.) The case was eventually assigned to Justice Marilyn Diamond in or around April 1997. *Id.* ¶¶ 239, 243.) At about this time Plaintiff became unable to continue paying his attorney and proceeded *pro se* in the matrimonial action. (*Id.* ¶ 247.) Plaintiff alleges

that Justice Diamond overrode the random assignment procedure normally used to assign judges to matrimonial cases in order to ensure that the case would be assigned to her. (*Id.* ¶¶ 240–42.) Justice Diamond reappointed Jo Ann Douglas as law guardian, (*Id.* ¶ 250), and ultimately presided over the "divorce and financial phase" of the action, including distribution of assets and determination of child support. [6] (*Id.* ¶ 239.) Justice Diamond also issued an order on February 24, 1999, regarding custody of A.Z., modifying prior custody orders. [7] (*Id.* ¶ 329.)

In or around August 2002 Plaintiff filed a petition, *pro se,* in New York Family Court seeking to enforce Justice Diamond's custody order entitling him to limited visitation and thus "restore a relationship with AZ." (Compl.¶¶ 478, 480.) At about the same time Karen Kosovsky filed a motion relating to child support in New York Supreme Court, which was assigned to Defendant Justice Lobis, and Plaintiff agreed to have his petition transferred to Justice Lobis for joint consideration with the child support motion. (*Id.* ¶ 481.) Plaintiff alleges that Justice Diamond contacted Justice Lobis in October 2002 in order to "prejudice [Justice Lobis] against Dr. Zahl and continue to terminate Dr. Zahl's parental rights" and to "manipulate[ ]" Justice Lobis. *Id* . ¶ 562.) A hearing was held on February 28, 2003 (*Id.* ¶ 491), at the conclusion of which Justice Lobis refused to enforce the Diamond custody order or to disqualify defendants Robert Dobrish and Jo Ann Douglas. [8] (Compl. ¶ 495.)

In or about August 2007, Plaintiff filed a petition for a writ of habeas corpus in New York County Family Court seeking to "redress the lack of contact [between Plaintiff and A.Z.], and illegal acts by some of the named defendants." (*Id.* ¶ 500.) The Family Court judge assigned to the petition ruled in Plaintiff's favor with respect to certain preliminary matters. (*Id.* ¶ 503–06.) Robert Dobrish, presumably on behalf of Karen Kosovsky, filed an application for an Order to Show Cause to have the habeas petition "removed back" to Justice Lobis shortly before the "return date" in Family Court. (*Id.* ¶ 506.) Justice Lobis transferred Plaintiff's petition to the post-judgment enforcement section of the Matrimonial Section of the New York County Supreme Court, where it was assigned to Defendant Justice Visitacion–Lewis. (*Id.* ¶ 507 .) Justice Visitacion–Lewis reappointed Douglas as law guardian, issued the Order to Show Cause, consolidated Plaintiff's petition with the post-judgment

matrimonial action, and "suspended" [9] Plaintiff's habeas corpus petition by an order issued in November 2007. (Compl. ¶¶ 513, 515, 516; Burson Decl., Ex. G.) Justice Visitacion–Lewis's decision was affirmed on appeal by the Appellate Division, First Department. (Compl.¶ 515.) Justice Visitacion–Lewis dismissed Plaintiff's petition on October 14, 2008. (*See* Burson Decl., Ex. H.)

**\*3** No later than 2003, Plaintiff became aware of the existence of the Soft Split Defendants and their connection to other defendants. (Compl.¶¶ 437, 493.) The Soft Split Defendants provided individuals affected by divorce with resources meant to help them cope with the attendant difficulties, including anonymous access through a website to a "faculty" of lawyers, mental health professionals, and accountants. (*Id.* ¶¶ 434–77.) Defendants Robert Dobrish and Jo Ann Douglas were affiliated with the Soft Split Defendants. (*Id.* ¶ 437.)

Plaintiff asserts that during the litigation of the state matrimonial action, up through the trial before Justice Diamond, the Kosovsky Defendants, the Dobrish Defendants, and McKeown harassed, intimidated, surveilled, and stole from Plaintiff, all in order to undermine his ability to present his case at trial and ultimately deprive him of access to A.Z. Plaintiff alleges that, to that end, the Kosovsky Defendants hired "armed private investigators" led by McKeown to provoke public confrontations during transfers of A.Z. which they videotaped in the hope of catching Plaintiff behaving objectionably. (*Id.* ¶¶ 41, 201, 204, 206.) The Kosovsky Defendants or McKeown sent anonymous derogatory letters and faxes to Plaintiff's colleagues, employees and other associates. (*Id.* ¶ 103.) McKeown's team of armed private investigators followed Plaintiff during his trips to pick up A.Z., using multiple cars, video cameras, and eavesdropping on Plaintiff's cellular telephone calls. (*Id.* ¶¶ 335–339, 360–61.) Occasionally, the Kosovskys or the investigators confronted Plaintiff physically, and some private investigators displayed weapons. (*Id.*) The Kosovskys contacted the police in early June 1993 and claimed that Plaintiff was armed and intended to kidnap A.Z., and that he had assaulted Karen Kosovsky, causing eight police officers to approach Plaintiff with guns drawn while he was sitting in his car with two year old A.Z. on his lap. (*Id.* ¶ 339.) McKeown used the transcript of Plaintiff's psychiatrist's deposition, taken by Dobrish, to induce New Jersey authorities to revoke Plaintiff's gun permit on trumped up accusations. (*Id.* ¶¶ 356–59.) When A.Z. was

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

three or four years old, the Kosovskys had their private investigators videotape Plaintiff reading to A.Z. while in his twenty-first floor apartment in Manhattan. (*Id.* ¶ 363.) McKeown also illegally obtained Plaintiff's telephone records (*id.* ¶¶ 364–71, 373–74) and bank records (*id.* ¶ 375), searched his trash (*Id.* ¶ 372), and harassed Plaintiff's current wife, attempting to dissuade her from marrying him in 1998 (*id.* ¶¶ 381–85). McKeown wrote a book entitled "Your Secrets are my Business," published in 2000, which detailed the activities he had undertaken at the behest of the Kosovsky Defendants. (*Id.* ¶¶ 23, 207, 340, 352–85).

The Kosovskys "withheld" A.Z. from Plaintiff in violation of court orders (*Id.* ¶¶ 199–200, 208–09, 217–18), and coached A .Z. to make false allegations of abuse against Plaintiff (*Id.* ¶ 245). During the divorce trial. Dobrish presented a pension statement that was stolen from Plaintiff's possession and used it to create the false impression that Plaintiff had lied on his "Statement of Net Worth." (*Id.* ¶¶ 265–69.) Dobrish also introduced an illegally obtained letter written by Plaintiff's secretary to a patient and confidential patient records to falsely imply that Plaintiff had surreptitiously siphoned money from his medical practice and had performed a medical procedure that showed his disability claim to have been fraudulent, which submission induced Justice Diamond to rule against Zahl on a number of issues. (*Id.* ¶¶ 271–75.)

**\*4** The Complaint seeks visitation with A.Z., other injunctive relief, and money damages in respect of litigation-related attorneys' fees and expenses and allegedly excessive child support obligations imposed by the state court. It is rife with allegations of bias and misconduct by the state judicial officers and institutions that have handled the Zahl–Kosovsky domestic relations litigation. Indeed, Plaintiff characterizes the Matrimonial Part of the New York State Supreme Court and other participants in the litigation and related matters as a "Matrimonial Mafia Enterprise" and the "NY Matrimonial Mafia Inc." in connection with his RICO claims. (*See, e.g.,* Compl. ¶¶ 578, 607.) The various deprivations and obligations of which Plaintiff complains are traceable to the judicial decisions, including the appointments of a guardian ad litem for A.Z. and the assessment of costs and fees relating to the guardianship, made in the course of the state court litigation.

## DISCUSSION

The pending motions raise several grounds for dismissal of the complaint, the most pertinent of which are discussed here.

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Arar v. Ashcroft,* 532 F.3d 157, 168 (2d Cir.2008) (internal citations and quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Morrison v. National Australia Bank Ltd.,* 547 F.3d 167, 170 (2d Cir.2008) (quoting *Natural Res. Def. Council v. Johnson,* 461 F.3d 164, 171 (2d Cir.2006)). However: "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *id.* (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)), and "that showing is not made by drawing from the pleadings inferences favorable to the party asserting" subject matter jurisdiction. *Id.* (quoting *APWU v. Potter,* 343 F.3d 619, 623 (2d Cir.2003)). In determining whether it has subject matter jurisdiction of the claims, the court may rely on evidence outside the pleadings. *Id.*

### Rooker–Feldman Doctrine

The *Rooker–Feldman* doctrine deprives lower federal courts of subject matter jurisdiction of any claim "that asserts injury based on a state judgment and seeks review and reversal of that judgment." *Hoblock v. Albany County Board of Elections,* 422 F.3d 77, 86 (2d Cir.2005). A district court's exercise of jurisdiction in such a case would be tantamount to appellate review of the state court judgment, in violation of 28 U.S.C. § 1257, which vests federal appellate jurisdiction of state court judgments exclusively in the United States Supreme Court. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 291–92, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). *Rooker–Feldman* applies only when four requirements are met:

**\*5** First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and

rejection of [that] judgment[ ].” Fourth, the state-court judgment must have been “rendered before the district court proceedings commenced”—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock,* 422 F.3d at 85 (alterations in original) (quoting *Exxon Mobil Corp.,* 544 U.S. at 284). “The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.” *Id.*

All of the Moving Defendants assert that the Court lacks jurisdiction of Plaintiff's claims because all of the claims are, in essence, attacks on the state court decisions in the matrimonial proceedings and seek modification or reversal of the decisions. Defendants' point is well-taken —Plaintiff seeks a declaration that all of the complained-of actions (including the custody, child support and law guardian appointment decisions) were illegal such that they may be adjudicated null and void, and seeks damages for expenses incurred in connection with the proceedings and/or by virtue of the state court orders.

The Court first considers the “substantive” *Rooker– Feldman* requirements. A federal suit is barred only to the extent that “it complains of injury from the state-court judgment and seeks review and rejection of that judgment, but not [to the extent that] it raises ‘some independent claim.” ’ *Hoblock,* 422 F.3d at 86 (quoting *Exxon Mobil Corp.,* 544 U.S. at 293). If the claim in the federal suit was not raised in state court but “nonetheless complains of injury from a state-court judgment and seeks to have that state-court judgment reversed,” then it is not independent. *Id.* The substantive requirements encompass all claims “whether or not raised in state court, that assert [ ] injury based on a state judgment and seek[ ] review and reversal of that judgment.” *Id.; see also McKithen v. Brown,* 481 F.3d 89, 97–98 (2d Cir.2007) (“[T]he applicability of the *Rooker–Feldman* doctrine turns not on the similarity between a party's state-court and federal-court claims ... but rather on the causal relationship between the state-court judgment and the injury of which the party complains in federal court.”). The Second Circuit's discussion, in *Hoblock,* of a hypothetical case in which a federal court plaintiff who relies on a theory not raised in state court but is nevertheless barred by the *Rooker–Feldman* doctrine is instructive here because it describes a situation similar to that presented in this case.

Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*6 *Hoblock,* 422 F.3d at 87. This hypothetical is also similar to the situation underlying the Supreme Court's decision in *Rooker v. Fidelity Trust Co.,* which held that federal district courts lack subject matter jurisdiction to entertain a suit seeking to have a state court judgment “declared null and void,” 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Supreme Court explained that “[i]f the [state court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding.” *Id.* at 415. Because the district court did not have appellate jurisdiction, it was without authority to adjudicate the matter. *Id.* at 416.

In the instant case, “state court[s], based purely on state law,” adjudicated the matrimonial proceedings, including child custody and support issues, between Kenneth Zahl and Karen Kosovsky. Zahl now sues in federal court for the reestablishment of his right to greater visitation with his child—*i.e.,* for the reversal of the state court judgment —on the ground that the state decisions violate his federal constitutional rights, and for a declaration to that effect. Plaintiff also asserts other claims, including RICO claims, but all of his claims of injury in the form of lost contact and untoward expenses arise fundamentally from the state judges' decisions in the state court matrimonial proceedings. Plaintiff's claims thus fall squarely within the *Rooker–Feldman* doctrine's substantive requirements because they seek to redress injuries caused by the state

court judgments by way of review and modification or reversal of those judgments. *Id.* at 86.

The Court now turns to the "procedural" *Rooker– Feldman* requirements. It is uncontested that Plaintiff lost in state court with respect to each decision that forms the basis of his claims. The first requirement is therefore met. Judgment was entered in 1999 and was thus rendered before the instant action was commenced, on September 26, 2008. Proceedings were held subsequent to the entry of judgment, including the 2003 denial of Plaintiff's petition to enforce the 1999 modified custody order and rulings relating to Plaintiff's 2007 habeas corpus petition (although final disposition of that petition had not occurred as of the time of the filing of the instant action). Justice Lobis expressly referred to the state court action as one in a "post-judgment" posture when she decided the matters before her in 2003. The distinction between the earlier "judgment" and each post-judgment "decision and order," which did not contemplate any further proceedings and which were no longer appealable at the time the instant action was filed, is purely nomenclatural and thus immaterial for *Rooker–Feldman* purposes. The fourth requirement, that the state court judgment have been rendered prior to the commencement of proceedings in district court, is satisfied as to these decisions.

The November 2007 order by Justice Visitacion–Lewis, however, was not final when this case was commenced. It was issued in clear contemplation of further proceedings, namely the resolution of the merits of the habeas corpus petition, which was still pending after the issuance of the subject order. Plaintiff's appeal of the November 2007 order was affirmed in June 2008, before this action was filed, and Justice Visitation–Lewis dismissed the petition on October 14, 2008. To the extent that the non-finality of the November 2007 interlocutory order precludes the dismissal of the claims pertaining to that order pursuant to the *Rooker–Feldman* doctrine, the Court abstains from exercising jurisdiction of those claims for the reasons stated *infra*.

**\*7** Because the four *Hoblock* requirements are met with respect to Plaintiff's claims insofar as they seek relief from the requirements or consequences of the state courts' orders, the Court is without jurisdiction of those claims. Accordingly, Counts I–X, XII, and XVII are dismissed.

*Eleventh Amendment*

The State Defendants seek dismissal of the claims against NYS UCS and OCA and all claims asserted against the Judicial Defendants in their official capacities, on grounds of immunity under the Eleventh Amendment to the Constitution. Each state, as well as "state agents and state instrumentalities that are, effectively, arms of a state," enjoy sovereign immunity under the Eleventh Amendment from suit, including those brought by the state's own citizens. *See, e.g., Woods v. Rondout Valley Central School Dist. Bd of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) (citations and internal quotation marks omitted). Eleventh Amendment immunity may be waived or abrogated by Congress. *See Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (citing *Woods,* 466 F.3d at 236). There is no indication, and Plaintiff does not argue, that the State Defendants have waived, or that Congress has abrogated, their Eleventh Amendment immunity.

"[T]he New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp,* 568 F.3d at 368 (2d Cir.2009) (citing *Woods,* 466 F.3d at 236). State officials sued in their official capacity are likewise entitled to Eleventh Amendment sovereign immunity because "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (discussing *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) and *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Official-capacity sovereign immunity extends to a state judge sued in her official capacity. *See, e.g., Sundwall v. Leuba,* 28 Fed. App'x 11 (2d Cir.2001); *Morris v. Main,* No. 08 Civ. 813(GLS)(DRH), 2009 WL 890634, at \*2 (N.D.N.Y. Mar. 31, 2009); *Winkler v. Grant,* No. 07 Civ. 6280T, 2008 WL 1721758, at \*2 (W.D.N.Y. Apr.8, 2008); *Daniel v. Safir,* 135 F.Supp.2d 367, 372 (E.D.N.Y.2001); *Brown v. City of New York,* 210 F.Supp.2d 235, 237 (S.D.N.Y.1999). Therefore, Plaintiff's claims against NYS UCS and OCA and his claims against the Judicial Defendants, to the extent they are asserted against those defendants in their official capacities and do not seek purely prospective relief, are barred by the Eleventh Amendment.

Accordingly, Counts I, III–X, and XVII are dismissed to the extent that they are asserted against NYS UCS and OCA or any Judicial Defendant in his or her official

capacity. However, the Eleventh Amendment does not bar official-capacity claims against state officials seeking only prospective relief. *See Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009) (citing *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). The only such claim, Count II, is therefore not subject to Eleventh Amendment sovereign immunity. [10]

*Younger Abstention*

 **\*8** Count II of the Complaint seeks to have this Court "enjoin the efficacy of the [sic] New York Judge Visitacion–Lewis'[s] order removing Zahl's Habeas Corpus Petition from Family Court" (Compl.¶ 622), and impose a "prospective injunction prohibiting the continued denial of contact with A.Z., the forced payment of up to $7,000 monthly to Defendant Karen Kosovsky in child support and add-on expenses" (*id.* ¶ 624) (emphasis in original). It appears that Plaintiff was seeking to preclude the Supreme Court from taking further action on the habeas petition that he had initiated in Family Court, and to obtain an injunction against enforcement of the custody and child support orders of the state court. [11]

In *Younger v. Harris,* the Supreme Court reminded lower federal courts that it had "repeat[ed] time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." 401 U.S. 37, 45 (1971). This rule of abstention reflects "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Although *Younger* itself involved an attempt to enjoin a state criminal prosecution, "[t]he policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex,* 457 U.S. at 432. "*Younger* generally prohibits courts from 'taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings' so as to avoid unnecessary friction." *Spargo,* 351 F.3d at 75 (quoting *Diamond "D" Constr. Corp. v. McGowan,* 282 F.3d 191, 198 (2d Cir.2002)). *Younger* abstention is mandatory when three conditions are met: "(1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims."

*Spargo,* 351 F.3d at 75. However, even when these conditions are met "a federal court may still intervene in state proceedings if the plaintiff demonstrates bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Id.* at 75, n. 11 (internal quotations and citations omitted).

Count II seeks to enjoin the state court from acting on a pending state habeas corpus proceeding in which Plaintiff asserted essentially the same claims as he does here. The first and third requirements for mandatory abstention are therefore met. In addition, "few interests can be considered more central than a state's interest in regulating its own judicial system." *Id.* at 75. Just as it would be improper for a federal court "to substitute itself for the State's appellate courts," *Huffman v. Pursue,* Ltd., 420 U.S. 592, 609, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), it is equally inappropriate for a federal court to substitute itself for the state's adjudicator of petitions for post judgment relief. The state has an important interest in ensuring that its "judicial system [will] be fairly accorded the opportunity to resolve federal issues arising in its courts." *Id.* The second requirement for mandatory abstention is therefore also met.

 **\*9** Plaintiff's allegations of misconduct by Justice Diamond and interference by Justice Diamond with Justice Lobis's decisions in 2003 do not defeat the propriety of *Younger* abstention. They are not directed at the judge who presides over the pending state proceedings, Justice Visitacion–Lewis. Those allegations do not call into doubt Justice Visitacion–Lewis's ability to properly adjudicate Plaintiff's constitutional claims in the context of his state court habeas corpus petition. Accordingly, Count II is hereby dismissed.

*Judicial Immunity*

A judge has absolute judicial immunity from suit with respect to claims brought against her in her individual capacity, provided that her actions were taken in her judicial capacity and not "in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "[J]udicial immunity is not overcome by allegations of bad faith or malice." *Id.* at 11. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Id.* at 12 (second alteration in original)

Zahl v. Kosovsky, Not Reported in F.Supp.2d (2011)
Case 5:19-cv-00305-TWD   Document 5   Filed 05/06/19   Page 48 of 52
2011 WL 779784

(quoting *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). "The fact that a proceeding is 'informal and ex parte ... has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." ' *Bliven v. Hunt,* 579 F.3d 204, 210 (2d Cir.2009) (quoting *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)). With the exception of certain actions allegedly taken by Justice Diamond, all of the Judicial Defendants' actions of which Plaintiff complains (including but not limited to decisions regarding custody, law guardianship and compensation therefor, child support and litigation expense allocation) were acts "normally performed by a judge" and are therefore within the scope of absolute judicial immunity.

Plaintiff asserts that Justice Diamond is not entitled to judicial immunity because she allegedly manipulated the assignment system to take control of Plaintiff's case, and because she failed to recuse herself for alleged conflict of interest. Plaintiff cites no relevant authority in support of his conclusory assertions that such actions vitiated Justice Diamond's jurisdiction to handle his case, and the Court has found none.

The failure of a judge to recuse herself in light of a conflict of interest does not deprive her of all jurisdiction to try the case before her, so as to deprive her of judicial immunity, *See, Sylvester v. Sorrell,* No. 08–CV–88, 2009 WL 819383, at *3 (D.Vt. March 25, 2009) (citing *Haynes v. Schimelman,* 2000 WL 502623, at *1 (D.Conn. March 8, 2000)); *cf. Rudow v. City of New York,* 822 F.2d 324, 328 (2d Cir.1987) (conflict of interest does not defeat prosecutorial immunity, which, like judicial immunity, requires that the prosecutorial act not have been undertaken in the absence of jurisdiction). Furthermore, "the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump,* 435 U.S. at 356. An erroneous application of the law, even if it causes significant harm to a party, is an act in excess, but not in the absence, of jurisdiction and does not deprive the judge of immunity. *Id.,* at 357, n. 7 (explaining that even convicting a criminal defendant of a nonexistent crime is not an act undertaken without jurisdiction).

**\*10** Plaintiff's claims against the Judicial Defendants are premised on the judges' alleged misapplication of the law and consequent alleged violation of Plaintiff's constitutional rights. These are precisely the kinds of claims from which the Supreme Court has held judges to be immune. The Judicial Defendants are therefore entitled to absolute judicial immunity as to all claims arising out of these judicial acts asserted against them in their individual capacities. Accordingly, Counts I, III–X, and XVII are dismissed to the extent that they are asserted against any Judicial Defendant in his or her individual capacity.

*Law Guardian Immunity*

Defendant Douglas, regardless of "whether [she acted] as a 'law guardian' or guardian ad litem," is similarly entitled to absolute quasi-judicial immunity. *Lewittes v. Lobis,* 164 Fed. App'x 97, 98 (2d Cir.2006); *see also Yapi v. Kondralyeva,* No. 07–4800–CV, 2009 WL 2030359, at *1 (2d Cir.2009). Accordingly, Counts I, IV, and VI–XII are hereby dismissed as against Douglas.

*Failure to State Claims*

When deciding a motion to dismiss a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the non-conclusory factual allegations in the complaint, and draws all reasonable inferences in Plaintiff's favor. *Roth v. Jennings,* 489 F.3d 499, 501 (2d Cir.2007); *see also Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. This plausibility standard governs pleadings in all civil actions, *Iqbal,* 129 S.Ct. at 1953. "Even after Twombly, though, [courts] remain obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009).

*No Private Right of Action for Certain Claims*

Plaintiff purports to assert claims for violations of N.Y. Penal Law Articles 155 and 175 (Count XI), 18 U.S.C. § 1708 (Count XIV), 42 U.S.C. § 408(a)(7) (Count XV), 42 U.S.C. §§ 1028 and 1029 (Count XVI), and 18 U.S.C.

§§ 1503 and 1512 (Count XVII). However, these criminal statutes do not provide for a private right of action and Plaintiff provides no authority suggesting otherwise. *See, e.g .,* *Peavey v. Holder,* No. 05–819(RWR), 2009 WL 3080464, at *9 (D.D.C. Sept.28, 2009) (no private right of action pursuant to 18 U .S.C. § 1503); *Bates v. Northwestern Human Services, Inc.,* 466 F.Supp.2d 69, 100 (D.D.C.2006) (no private right of action pursuant to 42 U.S.C. § 408); *Alexander v. Washington Gas Light Co.,* 481 F.Supp.2d 16, 33 (D.D.C.2006) (same); *Lucas–Cooper v. Palmetto GBA,* No. 05–cv–00959, 2006 WL 2583407, at *3 (N.D.Ohio Sept.7, 2006) (no private right of action pursuant to 42 U.S.C. § 1028); *Fraser v. Fiduciary Trust Co., Intern.,* No. 04 Civ. 6958(RMB)(GWG), 2005 WL 6328596, at *14 (S.D.N.Y. June 23, 2005) (no private right of action pursuant to 18 U.S.C. § 1512); *Moore v. New York City Dept. of Education,* No. 03 Civ.2034(LAP), 2004 WL 691523, at *5 (S.D.N.Y. Mar.31, 2004) (no private right of action under N.Y. Penal Law §§ 175.40 and 195.00); *Garay v. U.S. Bancorp,* 303 F.Supp.2d 299, 302–03 (E.D.N.Y.2004) (no private right of action pursuant to 42 U.S.C. § 1028); *Booth v. Bannon,* No. Civ. 01–147–JO, 2001 WL 34736641, at *1 (D.Or. June 8, 2001) (same); *Bartolomeo v. Liburdi,* No. 97–0624–ML, 1999 WL 143097, at *2 (D.R.I. Feb.4, 1999). In general, in determining whether a criminal statute implies a private right of action "the 'dispositive question' is whether Congress intended to create a private right of action," and courts "are to be 'especially reluctant' to imply a private right of action where the statute explicitly provides a different remedy." *Alaji Salahuddin v. Alaji,* 232 F.3d 305, 308 (2d Cir.2000) (citations omitted). In the absence of any authority to support an implied right of action pursuant to the above-named criminal statutes, the Court remains "especially reluctant" to infer such a right. Accordingly, Counts XI and XIV–XVII are hereby dismissed.

*Statutes of Limitations*

 **\*11** Under the federal "discovery rule" a claim accrues when the "plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002) (quoting *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980)). While the 367–page Complaint is not entirely coherent, it is clear that Plaintiff had suffered and discovered the injuries which give rise to his claims, namely the loss of his relationship with his daughter and the imposition of the financial burdens resulting from the support and add-on expense determinations, by the

time of Judge Lobis's "decision and order" on April 14, 2003. By that date, Justice Diamond had issued the July 10, 1998, judgment of divorce, including the resolution of the outstanding financial issues and the February 24, 1999, order modifying the prior custody order, and Justice Lobis had issued the orders of January 27, 2003, and April 14, 2003, and had heard oral argument on Plaintiff's petition and Karen Kosovsky's motion on February 28, 2003. These two judges had also made the appointments of defendant Jo Ann Douglas and the various "forensics" to which Plaintiff objected. Indeed, Plaintiff alleges no new injury, other than the continuation and extension of the existing injuries, after April 2003. Plaintiff's claims therefore accrued no later than April 14, 2003.

Plaintiff contends that the accrual of his claims should be delayed or the running of the statutes of limitations should be tolled on two grounds. Plaintiff first argues that the ongoing nature of the Defendants' alleged conspiracies tolls the statutes of limitations. However, it is well established that the limitations period is not affected by the existence of an ongoing conspiracy that encompasses otherwise time-barred claims. *See, e.g., Pinaud v. County of Suffolk,* 52 F.3d 1139, 1157 (2d Cir.1995); *Csoka v. County of Suffolk,* 85 F.Supp.2d 117, 121 (E.D.N.Y.2000); *Covington v. City of New York,* 916 F.Supp. 282, 286 (S.D.N.Y.1996). Plaintiff also argues conclusorily that Defendants' fraudulent concealment tolls the statutes of limitations. To succeed in tolling the limitations period on this argument, Plaintiff must prove: "(1) wrongful concealment by [Defendants], (2) which prevented [his] discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *In re Merrill Lynch Ltd. P'ship Lit.,* 154 F.3d 56, 60 (2d Cir.1998). However, Plaintiff proffers no facts substantiating any instance of concealment alleged to have occurred or continued in or after 2003, and instead points to recent events that are manifestly in open view (namely, the ongoing litigation in state court).[12] Therefore, neither the time of accrual nor the running of the limitations periods is affected.

*Section 1983, 1985 and 1986 Claims*

Federal courts apply the federal "discovery rule" for claim accrual and the "general or residual [state] statute [of limitations] for personal injury actions" to section 1983 claims. *Pearl,* 296 F.3d at 79–80 (alterations in original) (quoting *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct.

573, 102 L.Ed.2d 594 (1989)). In this case, that period is three years. *See id.* (citing N.Y. C.P.L.R. § 214(5)). Similarly, the statute of limitations for section 1985 claims is three years. *See Paige v. Police Dept. of Schenectady,* 264 F.3d 197, 199 n. 2 (2d Cir.2001) (citing *Cornwell v. Robinson,* 23 F.3d 693, 704 (2d Cir.1994)). Therefore, the limitations period expired no later than April 14, 2006, and Plaintiff's section 1983 and 1985 claims are untimely. Section 1986 claims are subject to a one year statute of limitations. 42 U.S.C.A. § 1986 (West 2003). *Accord Paige,* 264 F.3d at 199 n. 2. Therefore, the limitations period expired no later than April 14, 2004, and Plaintiff's section 1986 claims are untimely. Accordingly, Counts III–V are dismissed in their entirety.

*RICO Claims*

**\*12** While RICO claims are subject to the same accrual rule as other federal claims, *see Merrill Lynch,* 154 F.3d at 58, they are also capable of "separate accrual," starting a new limitations period running each time a "new and independent" RICO violation occurs, *id.* at 59 (citing *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1103 (2d Cir.1988)). *See also Rotella v. Wood,* 528 U.S. 549, 554, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (adopting the injury discovery rule for RICO claims). This is because "in some instances a continuing series of fraudulent transactions undertaken within a common scheme can produce multiple injuries which each have separate limitations periods." *Merrill Lynch,* 154 F.3d at 58 (citing *Bingham v. Zolt,* 66 F.3d 553, 559–61 (2d Cir.1995)) (noting that the *Bingham* court had found that the "new injuries" had been "caused by a variety of schemes which were related only in their ultimate goal"). Later efforts to conceal the injury, however, are not "separate and distinct fraudulent acts resulting in new and independent injuries," and thus do not cause the "separate accrual" of subsequent RICO claims. *Id.* at 59–60. The Second Circuit has held that "[c]ollection in later years cannot be viewed as a separate and distinct fraud creating new injuries as it was simply a part of the alleged scheme." *Id.* at 60. *See also Long Island Lighting Co. v. Imo Indus., Inc.* 6 F.3d 876, 887 (2d Cir.1993) (holding that damage resulting from plaintiff's installation of equipment previously known to be defective was not sufficiently independent from the injury caused by the receipt of the defective equipment to give rise to separate accrual); *Rafter v. Liddle,* No. 05 Civ. 4296(TPG), 2006 WL 2255093, at \*7 (S.D.N.Y. Aug.4, 2006) (holding that plaintiff's injury was her potential liability for subsequent

attorneys fees, and there was therefore no separate accrual when those fees were actually imposed); *Nat'l Group for Comme'n and Computers, Ltd. v. Lucent Tech., Inc.* 420 F.Supp.2d 253, 266 (S.D.N.Y.2006) (refusing to apply separate accrual rule where plaintiff could have discovered "the full extent of related, future injuries at the outset of a single, unlawful scheme"); *Pharr v. Evergreen Gardens, Inc.* No. 03 Civ. 5520(HB), 2004 WL 42262, at \*2 (S.D.N.Y. Jan.7, 2004) (holding that it was "beyond peradventure" that each of defendants' monthly mailing of illegal rent bills did not give rise to an injury new and independent from the initial injury caused by the underlying illegality).

The only post-April 2003 injuries of which Plaintiff complains are the direct results of the enforcement of, and compliance with, prior court orders and decisions, many of which were the products of Plaintiff's own initiation of proceedings in state court. These injuries flowed directly from Plaintiff's losses in the state court proceedings in or before April 2003, and are not "new and independent" and thus do not implicate the separate accrual rule.

**\*13** Similarly, the alleged occurrence of RICO predicate acts subsequent to Plaintiff's discovery of his injuries does not affect the accrual of his RICO claims. In *Rotella,* the Supreme Court reiterated its earlier rejection of the Third Circuit's "last predicate act rule" which had held that a RICO claim accrues when the plaintiff knew or should have known of the injury and the pattern of racketeering activity, and begins to run anew upon each predicate act forming part of the same pattern. 528 U.S. at 554 (citing *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997)). Accordingly, Plaintiff's allegations that the defendants have committed recent acts, namely the mailing of court orders and decisions, even if those acts could be legitimately construed as RICO predicate acts, do not renew or otherwise delay the accrual of his RICO claims.

Plaintiff's RICO claims are subject to a four-year statute of limitations. *See Agency Holding Corp. v. Malley–Duff & Associates, Inc.* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987); *accord Pearl,* 296 F.3d at 79 n. 1. Plaintiff argues that the limitations periods have not begun to run on these claims because the objectives of the RICO conspiracies have not yet been achieved or abandoned. (Opp.Br.37.) Plaintiff cites several Second Circuit criminal appellate decisions in support of his

argument, but fails to appreciate the distinction between criminal and civil RICO claims. Thus, it is true that the statute of limitations for the criminal prosecution of a RICO conspiracy "does not begin to run until the objectives of the conspiracy have been either achieved or abandoned." *United States v. Eppolito,* 543 F.3d 25, 48–49 (2d Cir.2008), "[b]ut there are significant differences between civil and criminal RICO actions, and [the Supreme Court] has held that criminal RICO does not provide an apt analogy" for the purpose of determining the civil limitations period, *Klehr,* 521 U.S. at 188. At any rate, it is now well established that the civil RICO statute of limitations begins to run, as do other civil statutes of limitations, when the plaintiff discovers, or should have discovered, his injury. *See Merrill Lynch,* 154 F.3d at 58. Therefore, the limitations period on Plaintiff's RICO claims expired no later than April 14, 2007, and those claims are untimely. Accordingly, Counts VI–IX are dismissed in their entirety.

### Wiretap Act Claims

The Wiretap Act, 18 U.S.C. §§ 2510 *et seq.,* provides a private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter," 18 U.S.C.A. § 2520 (West Supp.2009). Claims under the Wiretap Act are subject to a two-year statute of limitations, which begins to run from "the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C.A. § 2520(e) (West 2003). Therefore, the limitations period on Plaintiff's Wiretap Act claims expired no later than April 14, 2005, and those claims are untimely. Accordingly, Count XIII is dismissed in its entirety.

### Claims Against Soft Split Defendants

**\*14** The Court has held in abeyance Plaintiff's effort to obtain judgment by default against the Soft Split Defendants, one of whose alleged agent for service of process has denied holding any such authority. Plaintiff's claims against the Soft Split Defendants are of the same nature, and based on the substantially the same convoluted, conclusory and ultimately deficient allegations as those against the other Defendants. Even if proper service were assumed and any well-pleaded factual allegations taken as admitted, the Complaint is plainly deficient to state any federal claim upon which relief can be granted against the Soft Split Defendants. Accordingly, the complaint will be dismissed as against the Soft Split Defendants as well.

### State Law Claims

In light of the preclusion and/or deficiency of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction of his state law claims. *See* 28 U.S.C. § 1367(c)(3).

### *CONCLUSION*

For the foregoing reasons, and for substantially the reasons argued in the motions to dismiss the Complaint, the Moving Defendants' motions are granted and the Complaint is dismissed in its entirety, as against all defendants.

The Clerk of Court is respectfully requested to enter judgment dismissing the Complaint in accordance with this opinion and to terminate all pending motions, and close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 779784

### Footnotes

1    Zahl purports to bring this action individually and on behalf of his daughter. However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990). The Court therefore dismisses, *sua sponte,* the claims brought on Zahl's daughter's behalf. *See Berrios v. New York City Housing Authority,* 564 F.3d 130, 134 (2d Cir.2009) (*citing Wenger v. Canastota Central School District,* 146 F.3d 123, 125 (2d Cir.1998)).

2    The caption names "Judge Marylin G. Diamond." The New York State Unified Court System website confirms that the Court's spelling is correct.

Zahl v. Kosovsky, Not Reported in F.Supp.2d (2011)
Case 5:19-cv-00305-TWD    Document 5    Filed 05/06/19    Page 52 of 52
2011 WL 779784

3   ThenJustice Lippman is now the Chief Judge of the New York State Court of Appeals.

4   The Soft Split Defendants have not entered appearances, although the Court has received several communications from an individual through whom Soft Split Kids was purportedly served and who claims no affiliation with that entity. The Court has suspended Plaintiff's effort to obtain default judgments against the Soft Split entities pending resolution of the instant motion practice.

5   The 367–page long Complaint contains 702 paragraphs, with many subparagraphs. In light of Plaintiff's *pro se* status, the Court has endeavored to construe the Complaint liberally.

6   The Appellate Division, First Department, decision affirming the judgment and related orders notes that judgment of divorce was entered on July 10, 1998. *Kosovsky v. Zahl,* 257 A.D.2d 522, 684 N.Y.S.2d 524, 525 (App.Div.1999).

7   This order, modified on March 3, 1999 (Decl. of Kate Burson ("Burson Decl."), Ex. D), was affirmed by the Appellate Division, First Department. *Kosovsky v. Zahl,* 272 A.D.2d 59, 707 N.Y.S.2d 168 (App.Div.2000).

8   Justice Lobis issued two written decision, both of which refer to the "post-judgment matrimonial action," dated January 27, 2003, and April 14, 2003, addressing these and other issues. (*See* Burson Decl., Exs. E and 1.)

9   It appears from the appellate decision that, in connection with Plaintiff's habeas corpus petition, a so-called *Lincoln* hearing was scheduled and that Plaintiff was ordered to have no contact with A.Z. until after that hearing, but that the petition was not actually suspended. *Kosovsky v. Zahl,* 52 A.D.3d 305, 859 N.Y.S.2d 442 (N.Y.App.Div.2008).

10  Count II seeks to enjoin the "efficacy" of Judge Visitacion–Lewis's November 2007 order, have this Court either take jurisdiction of the state habeas corpus petition or remand it to Family Court, prohibit the continued denial of contact between Plaintiff and his daughter, and terminate the monthly child support and add-on expense payments.

11  To the extent that Plaintiff's claim in Count II seeks to enjoin enforcement of prior orders, rather than to enjoin the habeas corpus proceedings in state court, that claim is a direct challenge to the validity of those prior orders and must be dismissed on *Rooker–Feldman* grounds for the reasons discussed above.

12  In any event, Plaintiff had ample opportunity to discover the non-State Defendants' alleged contribution to his injuries by April 14, 2003. He attempted to present evidence during the divorce trial of the Kosovsky Defendants' and Dobrish's misappropriation and improper use of certain documents, and Defendant McKeown's 2000 book detailed all of his actions, on behalf of the Kosovsky Defendants, to torment Plaintiff and undermine his rights in the matrimonial action.

---

**End of Document**                           © 2019 Thomson Reuters. No claim to original U.S. Government Works.